KELLY WEIL (SBN 291398)
kweil@cpmlegal.com
**COTCHETT PITRE & MCCARTHY, LLP**
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA 90405
Telephone: (310) 392-2008
Facsimile: (310) 392-0111

KARIN SWOPE (*pro hac vice to be filed*)
kswope@cpmlegal.com
ANDREW J. FULLER (*pro hac vice to be filed*)
afuller@cpmlegal.com
**COTCHETT PITRE & MCCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (206) 299-4184

*Attorneys for Plaintiffs and the Putative Classes*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KARIN ROBINSON**, on behalf of **D.K.** and **G.K.**, **BRITTANY SANTISI**, on behalf of **P.B., J.S.**, and **J.F.**, **TAMMY PADGETT**, on behalf of **D.P.**, **ARTHUR HENRY**, on behalf of **C.H.**, **RACHEL SMITH**, on behalf of **T.W.**, and **KATHERINE KNIGHT**, on behalf of **A.K.**, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**TIKTOK INC., BYTEDANCE LTD., BYTEDANCE INC., TIKTOK LLC, TIKTOK U.S. DATA SECURITY INC., TIKTOK PTE. LTD.**, and **TIKTOK LTD.**,<br><br>Defendants. | CASE NO. 2:25-CV-08813<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

# **TABLE OF CONTENTS**

**PAGE(S)**

I.   INTRODUCTION ................................................................................1

II.  PARTIES.............................................................................................6

    A.   Plaintiffs..................................................................................6

    B.   Defendants ...............................................................................8

III. JURISDICTION AND VENUE........................................................12

IV.  SUBSTANTIVE ALLEGATIONS ...................................................14

    A.   The TikTok Application Arose from Musical.ly, an Application that Was Wildly Popular with Kids..................................................14

    B.   Defendants Collect "Personal Information" Protected by COPPA and the COPPA Rule from Children Under 13 Years Old and Exploit that Data for Profit. ......................................................16

    C.   Defendants' Conduct Weakened Parents' Ability to Protect Their Kids, Invaded Plaintiffs' and Class Members' Privacy Rights, and Caused Plaintiffs and Class Members Substantial and Continuing Injuries. ............24

V.   ALLEGATIONS RELATING TO PLAINTIFFS .............................25

    A.   Plaintiff P.B., a minor, by and through their parent, Brittany Santisi..........25

    B.   Plaintiff J.S., a minor, by and through their parent, Brittany Santisi...........26

    C.   Plaintiff J.F., a minor, by and through their parent, Brittany Santisi ..........27

    D.   Plaintiff D.P. a minor, by and through their parent, Tammy Padgett .........28

    E.   Plaintiff C.H., a minor, by and through their parent, Arthur Henry............29

    F.   Plaintiff D.K., a minor, by and through their parent, Karin Robinson........30

    G.   Plaintiff G.K., a minor, by and through their parent, Karin Robinson........31

    H.   Plaintiff T.W., a minor, by and through their parent, Rachel Smith ...........32

    I.   Plaintiff A.K., a minor, by and through their parent, Katherine Knight......33

VI.  ESTOPPEL AND TOLLING............................................................34

    A.   Estoppel ..................................................................................34

    B.   Discovery Rule Tolling ...........................................................35

    C.   Tolling of Statute of Limitations ............................................35

VII.    CLASS ACTION ALLEGATIONS ................................................................35

    A.    State Classes .................................................................................36

           1.    The Arizona Class……………………………………..………36

           2.    The Illinois Class...........................................................36

           3.    The Louisiana Class ......................................................37

           4.    The North Carolina Class ..............................................37

           5.    The Ohio Class...............................................................37

           6.    The Georgia Class ..........................................................38

VIII.   CLAIMS FOR RELIEF .............................................................................41

    A.    ARIZONA CLAIMS ....................................................................41

           COUNT I - ARIZONA CONSUMER FRAUD ACT .................41

           COUNT II - NEGLIGENCE .........................................................47

           COUNT III - UNJUST ENRICHMENT....................................52

    B.    GEORGIA CLAIMS....................................................................53

           COUNT IV - GEORGIA FAIR BUSINESS
           PRACTICES ACT ........................................................................53

           COUNT V - NEGLIGENCE ........................................................58

    C.    ILLINOIS CLAIMS.....................................................................64

           COUNT VI - ILLINOIS CONSUMER FRAUD AND
           DECEPTIVE BUSINESS PRACTICES ACT...........................64

           COUNT VII - NEGLIGENCE ....................................................70

    D.    LOUISIANA CLAIMS................................................................75

           COUNT VIII - LOUISIANA UNFAIR TRADE
           PRACTICES AND CONSUMER PROTECTION ACT. ...........75

           COUNT IX - NEGLIGENCE.......................................................82

           COUNT X - UNJUST ENRICHMENT ........................................87

    E.    NORTH CAROLINA CLAIMS...................................................88

COUNT XI - NORTH CAROLINA UNFAIR

TRADE PRACTICES ACT .......................................................88

COUNT XII - NEGLIGENCE ...................................................94

F.      OHIO CLAIMS ...................................................................100

COUNT XIII - OHIO CONSUMER SALES

PRACTICES ACT ...............................................................100

COUNT XIV - NEGLIGENCE...............................................107

IX.   PRAYER FOR RELIEF...................................................................112

X.    DEMAND FOR JURY TRIAL........................................................113

Plaintiffs P.B., J.S., and J.F., minors, by and through their parent, Brittany Santisi; D.P., a minor, by and through their parent, Tammy Padgett; C.H., a minor, by and through their parent, Arthur Henry; D.K. and G.K., minors, by and through their parent, Karin Robinson; T.W., a minor, by and through their parent, Rachel Smith; A.K., a minor, by and through their parent Katherine Knight, individually, and on behalf of all others similarly situated, hereby file suit against the Defendants listed below and allege the following based on personal knowledge, information and belief, the investigation of counsel, and public sources:

## I.    **INTRODUCTION**

1.    America is experiencing a mental health crisis among children and young adults. The suicide rate among children between 10 and 14 years old tripled between 2007 and 2019.[1] The number of children between 8 and 12 years old killing themselves increased by 8.2% *per year* between 2008 and 2022.[2] And according to the Children's Hospital Association, "between 2016 and 2021, suicide self-injury cases among patients ages 5-18 seen at children's hospital emergency departments increased by 168.6%."[3] The situation is not improving, with the Children's Hospital Association reporting in August 2025 that "[t]he trend in cases has remained essentially unchanged for the past four years, meaning the crisis is not abating."[4] Meanwhile, social media use among children has skyrocketed, with experts warning that social media use is substantially contributing to the mental health crisis.[5]

---

[1] Sally C. Curtin & Matthew F. Garnett, *Suicide and Homicide Death Rates Among Youth and Young Adults Aged 10–24: United States, 2001–2021* 471 NAT'L CTR. FOR HEALTH STAT. DATA BRIEF (June 2023), https://www.cdc.gov/nchs/products/databriefs/db471.htm
[2] Donna A. Ruch, Lisa M. Horowitz, Jennifer L. Hughes, *et al.*, *Suicide in US Preteens Aged 8 to 12 Years, 2001 to 2022*, JAMA NETWORK OPEN (July 30, 2024), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2821658?utm_source=For_The_Media&utm_medium=referral&utm_campaign=ftm_links&utm_term=073024#249817241
[3] *Addressing Pediatric Suicide*, CHILD.'S HOSP. ASS'N (Aug. 20, 2025), https://www.childrenshospitals.org/content/behavioral-health/summary/the-state-of-pediatric-suicide#:~:text=Who's%20affected?,Responding%20to%20the%20crisis.
[4] *Id.*
[5] *See, e.g.*, AM. COLL. OF PEDIATRICIANS, *Media Use and Screen Time – Its Impact on Children, Adolescents, and Families* (May 2020), https://acpeds.org/media-use-and-screen-time-its-impact-on-children-adolescents-and-families/;

2.     Defendants TikTok Inc., TikTok LLC, TikTok Ltd., TikTok Pte Ltd., TikTok U.S. Data Security Inc., ByteDance Ltd., and ByteDance Inc. (collectively, "TikTok" or "Defendants") operate and manage one of largest social media platforms in the world and have made it more difficult for parents to protect their children from social media's dangers and harms. They did this because kids are extremely profitable to them.

3.     For over six years, Defendants unlawfully exploited the data of millions of children in the United States under the age of 13. They collected this data by knowingly allowing and encouraging children to sign up for accounts on the TikTok full access platform ("Full Access Platform" or "Full Access Accounts") without their parents' knowledge or consent.

4.     The data that Defendants collected about these children was extensive and sensitive. It included the children's names, ages, images, social media accounts, email addresses, phone numbers, and persistent identifiers[6] for the devices that children used to access TikTok. Defendants also obtained children's videos, audio files, and photographs. These files included the child's image and voice and the metadata for videos, audio files, and photographs, including information on who created the files and when and where they did so. Defendants also obtained data on the devices the children used, as well as the children's locations and use of the Full Access Account. All of the data mentioned above constitutes sensitive and private information for the children involved.

5.     TikTok acknowledges that it collects this data from Full Access Platform users.[7]

---

Jean M. Twenge & W. Keith Campbell, *Associations between screen time and lower psychological well-being among children and adolescents: Evidence from a population-based study*, 12 PREVENTATIVE MED. REPS. 271 (Dec. 2018), https://www.sciencedirect.com/science/article/pii/S2211335518301827?via%3Dihub;

Betul Keles, Niall McCrae, & Annmarie Grealish, *A systematic review: the influence of social media on depression, anxiety and psychological distress in adolescents*, 25(1) INT'L J. OF ADOLESCENCE & YOUTH 79 (Mar. 2019), https://www.tandfonline.com/doi/full/10.1080/02673843.2019.1590851#abstract.

[6] A "persistent identifier" is information "that can be used to recognize a user over time and across different web sites or online services" including "a cookie, an internet protocol (IP) address, a processor or device serial number, or unique device identifier." 16 C.F.R. 312.2.

[7] *Privacy Policy*, TikTok, https://www.tiktok.com/legal/page/us/privacy-policy/en (last updated Aug. 19, 2024).

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

6.      Defendants profited handsomely by exploiting this data. Defendants used it to target children with behavioral advertising, provide third-parties with the data to boost advertising on the platform, and increase the extent of children's interactions with, and time spent on, TikTok.

7.      Defendants have long acknowledged the profitability to TikTok of children, who make up most of its users.[8] TikTok has created a version of its platform called "Kids Mode," which TikTok claims is for children under the age of 13. TikTok claims to impose age-gating by requiring users to enter their birthdates when creating an account and directing users with birthdates indicating that they are younger than age 13 to Kids Mode. Kids Mode restricts users' activity. Full Access Platform accounts are not subject to the restrictions applied to Kids Mode accounts.

8.      TikTok, however, knows that this age-gate method is ineffective. It is intended to help TikTok "save face" in the public eye, without undermining TikTok's ability to profit from collecting and exploiting children's sensitive data. Children under the age of thirteen can easily enter a fake birthday to have access to Full Access Accounts and avoid the restrictions on Kids Mode accounts. Children under 13 are incentivized to enter fake birthdays because entering their real birthday would restrict their own use.

9.      TikTok knows that children enter fake birthdays to evade Kids Mode. TikTok fails to impose effective age-gating because it would reduce TikTok's profitability. By knowingly permitting kids under 13 to use the Full Access Platform, TikTok maximizes both the data it collects and total engagement with its services and advertisers.

10.     TikTok's violation of a Permanent Injunction into which it entered with the U.S. Government on March 27, 2019[9] illustrates just how central children are to TikTok's profits. The 2019 Permanent Injunction enjoined TikTok from certain conduct,

---

[8] Paul Mozur, *Chinese Tech Firms Forced to Choose Market: Home or Everywhere Else*, N.Y. Times (Aug. 9, 2016), https://www.nytimes.com/2016/08/10/technology/china-homegrown-internet-companies-rest-of-the-world.html.

[9] Stipulated Order Civil Penalties, Permanent Inj., & Other Relief, *United States v. Musical.ly*, No. 19-cv-01439 (C.D. Cal. Mar. 27, 2019), ECF No. 10 (the "2019 Permanent Injunction").

including, but not limited to, violations of the Children's Online Privacy Protection Act Rule, 16 C.F.R. Part 312 ("COPPA Rule"). The Federal Trade Commission ("FTC") issued the COPPA Rule to implement the Children's Online Privacy Protection Act, 15 U.S.C. § 6501 *et seq*. ("COPPA"). COPPA makes it unlawful for website operators or online service providers who are directing their websites or services to children under 13 or who are knowingly gathering and maintaining personal information of children under 13 from doing so unless a parent of the child has provided verifiable consent and received notice.

11.    Defendants violated COPPA every time they either (1) collected the personal information of a child under 13 without notifying the child's parent and obtaining verifiable parental consent, or (2) failed to delete a child's personal information after a parent requested they do so or after becoming aware that the data was collected from a child whose parent never provided verifiable consent or was notified.

12.    Under 15 U.S.C. § 6502(c), COPPA violations constitute unfair trade practices under Section 5 of the FTC Act.

13.    On February 27, 2019, the United States filed a Complaint against Musical.ly and Musical.ly, Inc., two companies that TikTok purchased in 2017.[10] The United States alleged that Defendants were unlawfully gathering and using children's private information, as COPPA defined it.[11]

14.    The 2019 Permanent Injunction was entered on March 27, 2019 and imposed a civil penalty of $5.7 million for violations of the COPPA Rule and Section 5 of the FTC Act. The 2019 Permanent Injunction's terms also required Defendants to (1) cease violations of the COPPA Rule; (2) destroy the personal data of children under the age of 13; (3) terminate accounts of all users whose ages are not verifiable; and (4) maintain records on Defendants' adherence to the terms of the 2019 Permanent

---

[10] Musical.ly and Musical.ly, Inc., (respectively renamed TikTok Ltd. and TikTok Inc. in April 2019),
[11] Compl., *United States v. Musical.ly*, No. 2:19-cv-1439 (C.D. Cal. Feb. 27, 2019), ECF No. 1.

Injunction and the COPPA Rule.[12]

15.    In April 2019, Musical.ly and Musical.ly, Inc. were renamed TikTok Ltd. and TikTok Inc., respectively.

16.    TikTok continues to expand in the United States.[13] In its 2019 Complaint, the United States alleged that the app had 65 million registered U.S. accounts.[14] TikTok reported that, as of December 2024, the application had more than 170 million users.[15] The number of children who use the platform is staggering. TikTok estimated in July 2020 that over one-third of its 49 million daily users in the U.S. are 14 years old or younger.[16] Upon information and belief, Defendants classify users internally as age 14 and younger in an effort to avoid expressly admitting how many children use TikTok who are under the age of 13.

17.    The United States Department of Justice ("DOJ") filed a Complaint against TikTok on August 2, 2024 alleging that TikTok violated the terms of the 2019 Preliminary Injunction and continued to violate the COPPA Rule by unlawfully gathering and using the private information of children under 13 years old without notifying a parent and obtaining verifiable parental consent.[17]

18.    The DOJ alleged in its Complaint that Defendants, during the Class Period, have: (1) failed to delete data and accounts of users that TikTok knows are children; (2) collected children's personal information through the provision of services directed to children; (3) knowingly opened user accounts for children and gathered those children's data without notifying a parent and obtaining verifiable parental consent; (4) failed to

---

[12] Stipulated Order Civil Penalties, Permanent Inj., & Other Relief, *United States v. Musical.ly*, No. 19-cv-01439 (C.D. Cal. Mar. 27, 2019), ECF No. 10.
[13] Erin Griffith, *U.S. Ban of TikTok Is Set to Deal a Major Blow to ByteDance, Its Chinese Owner*, N.Y. Times (Jan. 17, 2025), https://www.nytimes.com/2025/01/17/technology/tiktok-ban-bytedance.html.
[14] Compl. at 5, *United States v. Musical.ly*, No. 2:19-cv-1439 (C.D. Cal. Feb. 27, 2019), ECF No. 1.
[15] *Year on TikTok 2024: A little creativity sparks a lot of impact*, TikTok (Dec. 4, 2024), https://newsroom.tiktok.com/en-us/year-on-tiktok-2024/?ref=tos.gg.
[16] Raymond Zhong & Sheera Frenkel, *A Third of TikTok's U.S. Users May Be 14 or Under, Raising Safety Questions*, N.Y. Times (Sept. 17, 2020), https://www.nytimes.com/2020/08/14/technology/tiktok-underage-users-ftc.html.
[17] Compl. Permanent Inj., Civil Penalty J., & Other Relief ("DOJ Complaint") at ¶¶ 37-38, *United States v. ByteDance Ltd.*, No. 2:24-cv-06535 (C.D. Cal. Aug. 2, 2024), ECF No. 1.

honor parental requests for the deletion of children's data and accounts.[18]

19.    The DOJ also alleged that Defendants failed to maintain records regarding their adherence to the terms of the 2019 Permanent Injunction and COPPA Rule.[19] Due to Defendants' violation of their record-maintenance obligations, the DOJ stated that it has been unable to determine the full extent of TikTok's violations of both the 2019 Permanent Injunction and the COPPA Rule.[20]

20.    By collecting and using the Private Data[21] of children under 13 years of age without parental notice or consent, Defendants have engaged in unfair business practices in violation of the consumer protection statutes of Arizona, Georgia, Illinois, Louisiana, North Carolina, and Ohio. Each of these states has consumer protection statutes which are modeled on the FTC Act and prohibit unfair or deceptive business practices.

21.    These states require courts to give weight to orders and rules of the Federal Trade Commission when determining whether conduct constitutes an unfair or deceptive practice under their consumer protection statutes.

22.    Through its unlawful conduct discussed above, TikTok has committed negligence under the law of Arizona, Georgia, Illinois, Louisiana, North Carolina, and Ohio, and been unjustly enriched under the law of Arizona and Louisiana.

23.    Plaintiffs, through their parents, have brought this action asserting the claims below, on behalf of themselves and the classes of similarly-situated minors. Plaintiffs seek damages, restitution, unjust enrichment, and appropriate injunctive or equitable relief to address Defendants' unlawful behavior.

## II.    PARTIES

### A.    Plaintiffs

24.    Plaintiff P.B., a minor, brings their claims by and through their parent, Brittany Santisi. Plaintiff P.B. and Brittany Santisi are natural persons and residents and citizens of the State of Ohio. During the Class Period, P.B. created and used a TikTok

---

[18] *Id.* ¶¶ 39–96.
[19] *Id.* ¶ 38.
[20] *Id.*
[21] *See infra* ¶¶ 70–71.

account (while under the age of 13) and regularly viewed content on the TikTok platform.

25.    Plaintiff J.S., a minor, brings their claims by and through their parent, Brittany Santisi. Plaintiff J.S. and Brittany Santisi are natural persons and residents and citizens of the State of Ohio. During the Class Period, J.S. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

26.    Plaintiff J.F., a minor, brings their claims by and through their parent, Brittany Santisi. Plaintiff J.F. and Brittany Santisi are natural persons and residents and citizens of the State of Ohio. During the Class Period, J.F. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

27.    Plaintiff D.P., a minor, brings their claims by and through their parent, Tammy Padgett. Plaintiff D.P. and Tammy Padgett are natural persons and residents and citizens of the State of North Carolina. During the Class Period, D.P. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

28.    Plaintiff C.H., a minor, brings their claims by and through their parent, Arthur Henry. Plaintiff C.H. and Arthur Henry are natural persons and residents and citizens of the State of Louisiana. During the Class Period, C.H. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

29.    Plaintiff G.K., a minor, brings their claims by and through their parent, Karin Robinson. Plaintiff G.K. and Karin Robinson are natural persons and residents and citizens of the State of Arizona. During the Class Period, G.K. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

30.    Plaintiff D.K., a minor, brings their claims by and through their parent,

Karin Robinson. Plaintiff D.K. and Karin Robinson are natural persons and residents and citizens of the State of Arizona. During the Class Period, D.K. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

31.    Plaintiff T.W., a minor, brings their claims by and through their parent, Rachel Smith. Plaintiff T.W. and Rachel Smith are natural persons and residents and citizens of the State of Illinois. During the Class Period, T.W. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

32.    Plaintiff A.K., a minor, brings their claims by and through their parent, Katherine Knight. Plaintiff A.K. and Katherine Knight are natural persons and residents and citizens of the State of Georgia. During the Class Period, A.K. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

**B.    Defendants**

33.    Defendant ByteDance Ltd. is a Cayman Islands company that is headquartered in Beijing, China. ByteDance Ltd. created and owns the proprietary algorithm that underlies TikTok's "For You" feed. ByteDance Ltd. transacts or has transacted business in this District and throughout the United States. It has also maintained offices in the U.S. and in other countries.

34.    Defendant ByteDance Inc. is a Delaware corporation with its principal place of business located at 1199 Coleman Avenue, San Jose, California 95110. ByteDance, Ltd. is the sole owner of ByteDance, Inc. ByteDance Inc. transacts or has transacted business in this District and throughout the U.S.

35.    Defendant TikTok Inc. is a California corporation with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230. TikTok Inc. transacts or has transacted business in this District and throughout the U.S.

36.    Defendant TikTok LLC is a Delaware limited liability company that is

headquartered at 5800 Bristol Parkway, Culver City, California 90230. TikTok LLC is the sole owner of TikTok Inc. TikTok LLC transacts or has transacted business in this District and throughout the U.S.

37.    Defendant TikTok U.S. Data Security Inc. is a Delaware corporation that is headquartered at 5800 Bristol Parkway, Culver City, California 90230. TikTok U.S. Data Security Inc. is a subsidiary of TikTok Inc. and "controls access to protected U.S. user data, content recommendation, and moderation systems" for U.S. consumers on the TikTok platform. TikTok U.S. Data Security Inc. transacts or has transacted business in this District and throughout the United States.

38.    Defendant TikTok Pte. Ltd. is a Singapore company with its principal place of business at 1 Raffles Quay, #26-10, South Singapore 04583. The Apple App Store, the Google Play Store, and the Microsoft Store list TikTok Pte Ltd. as the "seller" of the TikTok application available in those stores. TikTok Pte. Ltd. transacts or has transacted business in this District and throughout the United States.

39.    Defendant TikTok Ltd. is a Cayman Islands company and has its principal place of business in Singapore or Shanghai, China. TikTok Ltd. wholly owns TikTok LLC and TikTok Pte. Ltd. The Apple App Store lists TikTok Ltd. as the "developer" of the TikTok application. TikTok Ltd. transacts or has transacted business in this District and throughout the United States.

40.    Collectively, Plaintiffs refer to Defendants ByteDance Ltd., ByteDance Inc., TikTok Inc., TikTok LLC, TikTok U.S. Data Security Inc., TikTok Pte. Ltd., and TikTok Ltd. as "Defendants or "TikTok".

41.    Throughout the class period and at all relevant times, each Defendant acted both individually and in concert with every other named Defendant in engaging in the conduct alleged herein. At all relevant times, each Defendant acted: (a) under express or implied agency; (b) as a principal; and/or (c) with actual or ostensible authority to engage on behalf of each Defendant in the conduct alleged in this Complaint. Defendants have joined together in a conspiracy, common enterprise, and common course of conduct, the

purpose of which is and was to engage in conduct alleged in this Complaint.

42.    The Defendants' conspiracy, common enterprise, and common course of conduct continues to the present. Each Defendant was aware, or should have known, that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Each Defendant aided and abetted the other Defendants in committing the wrongful acts alleged by (1) assisting in the commission of those alleged wrongful acts, (2) intending to, and, in fact, assisting in, facilitating, or encouraging the commission of the wrongful acts.

43.    Executives, employees, and management, and ownership substantially overlaps among the Defendants.

44.    For example, Defendant TikTok LLC owns TikTok Inc., which owns TikTok U.S. Data Security, Inc. ByteDance Ltd. is the parent and owner of ByteDance, Inc. and TikTok, Ltd. TikTok Ltd. owns TikTok LLC and TikTok Pte. Ltd.

45.    ByteDance Ltd. and TikTok Inc. executives, including Zhu Wenjia, Liang Rubo, Zhang Yiming, and Zhao Pengyuan direct and control both ByteDance Ltd. and TikTok Inc.

46.    Since 2019, the TikTok application has been promoted and marketed in the United States, including through the Google Play Store and the Apple App Store, by TikTok Inc. and ByteDance Ltd. TikTok Pte. Ltd. is the United States distributor of TikTok through both the Google Play Store and the Apple App Store. The Apple App Store, meanwhile, lists TikTok, Ltd. as the developer of the app and the Google Play Store lists TikTok Pte. Ltd. as the developer.

47.    TikTok Ltd. and ByteDance Ltd. possess authority to approve or prevent the implementation of TikTok's supposed "safety features." ByteDance Ltd. created the algorithm that determines video recommendations on TikTok and also owns the algorithm, which is central to the app's functionality. Tiktok.com is registered to TikTok Ltd. TikTok U.S. Data Security Inc. has maintained, since 2023, the Private Data of children under 13. TikTok Inc. has been responsible for transmitting that Private Data

to TikTok U.S. Data Security Inc.

48.    One of the reports submitted to the Australian Select Committee on Foreign Interference through Social Media stated that, according to an insider at ByteDance Ltd. TikTok Inc. is "not developed enough to be a self-contained business unit. Therefore . . . TikTok draws on personnel, experience, and methods of ByteDance's Douyin app, software, and commercial model to achieve 'technology accumulation and business breakthroughs.'"[22] The report also discusses shared personnel between ByteDance Ltd. and TikTok Inc. and reaches the conclusion that ByteDance Ltd.'s executive leadership views ByteDance Ltd. and TikTok as interchangeable entities.[23]

49.    From 2020 to the present, TikTok Inc.'s Chief Executive Officers ("CEOs" or "CEO") (Kevin Mayer, V. Pappas, and Shou Zi Chew), have held senior positions at ByteDance Ltd. In addition, ByteDance Ltd.'s CEOs (Zhang Yiming and Liang Rubo) have simultaneously served as directors at TikTok Ltd. TikTok Inc. employees participate in ByteDance Ltd.'s stock option plan. ByteDance Ltd. has control over TikTok Inc.'s e-commerce operations, and the leadership of the e-commerce operations of TikTok Inc. directly report to ByteDance Ltd.'s executives instead of TikTok Inc.'s CEO. The head of human resources at TikTok Inc. reports to the head of human resources at ByteDance Ltd. TikTok Inc. executives also state on their public LinkedIn profiles that "ByteDance/TikTok" employs them.[24]

50.    Roland Cloutier, TikTok Inc.'s Global Chief Security Officer, also worked as data security and cyber risk support for ByteDance Ltd.

51.    TikTok Pte. Ltd.'s officers and directors have also overlapped and been shared with those at ByteDance Inc. TikTok Inc.'s officers and directors have also overlapped and been shared with those at TikTok Pte. Ltd.

---

[22] Rachel Lee *et al.*, *TikTok, ByteDance, and their ties to the Chinese Communist Party: Submission to the Senate Select Committee on Foreign Interference through Social Media* [Submission 34] at 42, Austl. S. Select Comm. on Foreign Interference on Soc. Media (Mar. 14, 2023), https://t.co/ROPtMMud89.
[23] *Id.*
[24] Rachel Lee *et al.*, *TikTok, ByteDance, and their ties to the Chinese Communist Party: Submission to the Senate Select Committee on Foreign Interference through Social Media* [Submission 34] at 43, Austl. S. Select Comm. on Foreign Interference Through Soc. Media (Mar. 14, 2023), https://t.co/ROPtMMud89.

52.     Shou Chew was serving as Chief Financial Officer of ByteDance Ltd. when he became CEO of TikTok Inc. in April 2021. As TikTok Inc.'s CEO, Shou Chew reports to ByteDance Ltd.'s CEO. ByteDance Ltd. also pays compensation and benefits to Shou Chew.

53.     Employees of ByteDance Ltd. and TikTok, Ltd. regularly sign contracts on TikTok Inc.'s behalf. Upon information and belief, TikTok has a single centralized banking account for ByteDance Ltd.'s products, including TikTok.

54.     Upon information and belief, TikTok functions on a "shared services" business structure under which ByteDance Ltd. provides safety, privacy, and legal resources, including personnel. For instance, ByteDance Ltd. controls oversight and corporate and legal compliance at TikTok Inc. ByteDance Ltd.'s Global General Counsel, who reports to ByteDance Ltd.'s CEO, oversees TikTok Inc.'s legal affairs.[25] The Director of Legal Affairs at ByteDance Ltd. was designated as the point of contact along with outside counsel for the FTC to communicate with TikTok Inc. and/or TikTok Ltd. regarding TikTok's compliance with the 2019 Permanent Injunction.

55.     Defendants' employees communicate with each other using Lark, an internal, shared messaging platform. On Lark, Defendants' employees message each other individually and in groups. TikTok Inc.'s CEO Shou Zi Chew testified before Congress that he uses Lark to communicate "with employees at ByteDance [Ltd.]" and that ByteDance Ltd.'s employees work on the TikTok platform.[26]

III.     **JURISDICTION AND VENUE**

56.     This Court possesses general jurisdiction over Defendants ByteDance Inc, TikTok LLC, TikTok Inc., and TikTok U.S. Data Security, Inc. because their principal places of business are in California.

57.     This Court possesses specific jurisdiction over all Defendants because

---

[25] *ByteDance Appoints John Rogovin as Global General Counsel*, TikTok (June 3, 2024), https://newsroom.tiktok.com/en-us/bytedance-appoints-john-rogovin-as-global-general-counsel.
[26] *See TikTok: How Congress Can Safeguard American Data Privacy and Protect Children from Online Harms: Hearing Before H. Comm. on Energy & Com,* 118th Cong. 1, 96 (2023), https://www.congress.gov/118/chrg/CHRG-118hhrg53839/CHRG-118hhrg53839.pdf (testimony of Shou Chew, CEO, TikTok, Inc.).

Defendants purposefully availed themselves of the privilege of conducting activities in California, and Plaintiffs' claims arise out of or relate to Defendants' contacts with California. During the Class Period, TikTok characterized Los Angeles, California as a global and U.S. headquarters. Approximately 890,000 businesses in California and 16 million people in California use the TikTok application.[27] During the Class Period, each Defendant also pursued a common course of conduct in California:

    a.    Defendants have encouraged and continue to encourage California residents under 13 years old to use the TikTok application;

    b.    Defendants exploited and continue to exploit the personal and private data of Californians under 13 years old in order to maximize advertising and related profits;

    c.    Defendants sold and continue to sell ads targeting California residents under the age of 13 based on data collected in violation of the COPPA Rule;

    d.    Defendants TikTok Inc. and TikTok LLC are incorporated in California and have 5800 Bristol Parkway, Suite 100, Culver City, California 90230 as their principal place of business.

    e.    Defendants made and used Los Angeles, California as a global headquarters and U.S. headquarters;

    f.    Defendants jointly developed and implemented the conduct alleged herein from the Central District of California;

    g.    Defendants created and provided tools that empowered California companies to advertise to children under 13 years of age using behavioral advertising techniques.

    h.    TikTok's Chief Operating Officer ("COO") was based in TikTok's Culver City, California office. During a majority of the Class Period, TikTok's COO had oversight and responsibility for user operations,

---

[27] *TikTok: THE VALUE OF THE APP FOR CONSUMERS AND BUSINESS LEADERS IN CALIFORNIA*, Oxford Econ. (Mar. 2024), https://a-us.storyblok.com/f/1018266/x/2ecc5c0ed3/tiktok_factsheet_ca.pdf.

1    marketing, content, business intelligence, and certain partnerships.[28]

2        i.    Defendants have made misrepresentations to California residents

3            under the age of 13 and their California resident parents regarding

4            TikTok's data collection activities.

5    58.    Under 28 U.S.C. § 1391(b), venue is proper in this District because a

6    substantial portion of the conduct described in this Class Action Complaint occurred and

7    was carried out in this District.

8    59.    The Court possess subject-matter jurisdiction pursuant to 28 U.S.C.

9    §1332(d) under the Class Action Fairness Act because the amount-in-controversy in this

10    matter exceeds $5,000,000, exclusive of interest and costs, the proposed Classes include

11    plaintiffs from different states than Defendants, and there are more than 100 potential

12    Class Members, as defined below.

13    60.    Pursuant to 28 U.S.C. § 1332(a), this Court has subject-matter jurisdiction

14    over the matters filed in this multidistrict litigation because the amount in controversy

15    in these matters exceeds $75,000 and Plaintiffs and Defendants in these cases are

16    residents of different states.

17    **IV.    <u>SUBSTANTIVE ALLEGATIONS</u>**

18        **A.    The TikTok Application Arose from Musical.ly, an Application that**

19            **Was Wildly Popular with Kids.**

20    61.    The TikTok application, as it exists in the United States, originated from

21    Musical.ly, a social media application that hosted users short lip-sync videos and proved

22    very popular with children. Musical.ly was created in 2014. Two years later, the *New*

23    *York Times* reported on how Musical.ly's was widely popular with kids:

24        The app does not collect or show the age of its users, but some

25        of its top-ranked users, whose posts routinely collect millions of

26        likes, called hearts, appear from their videos and profile photos

27    _____

[28] Dolores Quintana, *TikTok's Soaring Ambitions: Expanding Culver City HQ Amidst Global Growth*,
WestsideToday (Aug. 13, 2023), https://westsidetoday.com/2023/08/13/tiktoks-soaring-ambitions-expanding-culver-city-hq-amidst-global-growth/; *LA500 2023: Vanessa Pappas*, L.A. Bus. J. (June 5, 2023),
https://labusinessjournal.com/special-editions/la500/2023-la500/technology-2023/la500-2023-vanessa-pappas/.

28

to be in grade-school. Until recently, the app had a feature that suggested users to follow based on their location. In New York, that feature revealed a list composed largely not just of teenagers, but of children.[29]

62.    By 2017, Musical.ly had obtained 60 million users. A majority of them were in the United States,[30] with a substantial amount being minors under 13 years of age.[31]

63.    ByteDance Ltd. created the TikTok application in 2017. In November of that year, it purchased Musical.ly. It combined Musical.ly and the TikTok application, including their data, into a single platform in August 2018.

64.    Users of the TikTok application create, post, and share with others short-form videos. Defendants profit from the TikTok application by selling to third-parties the ability to show ads on the application to users and by generating other income through business conducted on "TikTok Shop."[32] Defendants do not charge people to download the application.

65.    Data on the application's users is incredibly valuable to Defendants because it allows Defendants to enhance the value of the application to advertisers. This is because TikTok targets users with specific ads (i.e., targeted advertising) that cater to users' specific interests or backgrounds. TikTok targets the application's users by gathering persistent identifiers (e.g., IP addresses and cookies) about users and combining the identifiers it collects with other data,[33] like image and audio information, metadata, location data, device information, data from cookies and similar technologies

---

[29] John Herrman, *Who's Too Young for an App? Musical.ly Tests the Limits,* N.Y. Times (Sept. 16, 2016), https://www.nytimes.com/2016/09/17/business/media/a-social-network-frequented-by-children-tests-the-limits-of-online-regulation.html.

[30] *See* Jon Russell & Katie Roof, *China's Bytedance is buying Musical.ly in a deal worth $800M-$1B,* TechCrunch (Nov. 9, 2017, 6:54 PM), https://techcrunch.com/2017/11/09/chinas-toutiao-is-buying-musical-ly-in-a-deal-worth-800m-1b/#:~:text=The%20deal%20is%20undisclosed%20but,are%20based%20in%20the%20U.S.

[31] Compl. ¶ 19, *United States v. Musical.ly,* No. 2:19-cv-1439 (C.D. Cal. Feb. 27, 2019), ECF No. 1.

[32] *See* Lydia Kibet, *How Does TikTok Make Money?,* GoBankingRates (Apr. 23, 2021), https://www.gobankingrates.com/money/business/how-does-tiktok-make-money/.

[33] *See About Ad Targeting in TikTok Ads Manager*, TikTok, https://ads.tiktok.com/help/article/ad-targeting?lang=en (last updated May 2025).

that track users across the internet, profile and account details, and user content, including accounts followed, messages, data on users' purchases, videos watched, "liked" videos, content viewed, content created, and application usage data.[34] The more users that TikTok gains, the more data that TikTok collects and the more that TikTok profits from the sale of advertising.[35]

**B.    Defendants Collect "Personal Information" Protected by COPPA and the COPPA Rule from Children Under 13 Years Old and Exploit that Data for Profit.**

66.    COPPA, 15 U.S.C. § 6501 *et seq.,* was enacted because of public concern that operators of online services and websites were tracking children's acts online. The statute is intended to "maintain the security of personally identifiable information of children collected online" and "protect children's privacy by limiting the collection of personal information from children without parental consent."[36]

67.    COPPA "prohibits unfair . . . acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet."[37] The statute applies to any operator of a commercial website or online service directed to children under 13 years of age that collects, uses, and/or discloses children's personal information. It also states that "[w]ebsite or online service directed to children means a commercial website or online service, or portion thereof, that is targeted to children." 6 C.F.R. § 312.2.

68.    COPPA does not require that operators of online services or websites directed to children that collect personal information from users have actual knowledge that any individual user is under the age of 13. Thus, for all practical purposes, operators

---

[34] *Privacy Policy*, TikTok, https://www.tiktok.com/legal/page/us/privacy-policy/en (last updated Aug. 19, 2024).

[35] *See* Zheping Huang, *TikTok Has a Few Main Ingredients for Making Money*, Bloomberg (June 28, 2022, 3:45 AM), https://www.bloomberg.com/news/newsletters/2022-06-28/how-does-tiktok-make-money-app-relies-on-a-few-main-ingredients (TikTok's algorithm helps it serve better targeted ads that have tripled its revenue).

[36] 114 Cong. Rec. S125787 (daily ed. Oct. 21, 1998) (statement of Mr. Bryan).

[37] 16 C.F.R. § 312.1.

of child-directed sites or online services must presume that all users are children.[38]

69.    COPPA's standards and requirements correspond to, and have helped influence, current and established societal norms for respecting and protecting children's privacy interests.

70.    COPPA defines personal information "as individually identifiable information about an individual collected online." 15 U.S.C. § 6501(8). The COPPA Rule defines "Personal Information" as including:

1.    A first and last name;

2.    A home or other physical address including street name and name of a city or town;

3.    Online contact information as defined in this section;

4.    A screen or user name where it functions in the same manner as online contact information, as defined in this section;

5.    A telephone number;

6.    A government-issued identifier, such as a Social Security, State identification card, birth certificate, or passport number;

7.    A persistent identifier that can be used to recognize a user over time and across different websites or online services. Such persistent identifier includes, but is not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;

8.    A photograph, video, or audio file where such file contains a child's image or voice;

9.    Geolocation information sufficient to identify street name and name of a city or town; [or] . . .

10.    Information concerning the child or the parents of that child that the

---

[38] *Complying with COPPA: Frequently Asked Questions*, Federal Trade Commission, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last accessed Jul. 11, 2025).

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

operator collects online from the child and combines with an identifier described in this definition."[39]

71.   TikTok gathers the "Personal Information" listed above in paragraph 70 from children under the age of 13 who use the Full Access Platform. TikTok also gathers other personally identifying information, including, but not limited to, the following:

1.   Account and profile information: name, age, username, password, language, email, phone number, social media account information, profile image;

2.   User-generated content and metadata: comments, photos, livestreams, videos, audio recordings, text, hashtags, virtual item videos, creation time/location, and creator identity;

3.   Pre-uploaded content: versions of content created or imported before posting, including versions without effects;

4.   Messages: message content, timestamps (sent, received, read), and participant information;

5.   Clipboard content (with user permission): text, images, and videos copied to your device clipboard;

6.   Purchase information: payment card details, third-party payment information (e.g., PayPal), billing and shipping address, warranty info, purchase history (purchase made, time, amount spent);

7.   Phone and social network contacts (with user permission): names, phone numbers, email addresses, public profile information of contacts;

8.   Choices and communication preferences;

9.   Unspecified information used to verify identity or age;

10.  Correspondence: information shared when contacting TikTok;

11.  Survey and promotion data: gender, age, likeness, preferences, and

---

[39] COPPA Rule, 16 C.F.R. § 312.2.

participation details;

12. Third-party service data: public profile info, email, contact lists from platforms like Facebook, Twitter, Instagram, Google;

13. Partner and advertiser data: activities on other websites/apps/stores, purchase history, mobile ad IDs, hashed contact info, cookie IDs;

14. Affiliated entities data: activity on related platforms;

15. Information from others: mentions in User Content/messages, contact details submitted by third parties;

16. Public and institutional sources: data from public sources, governments, organizations, and charities;

17. Internet/network activity: IP address, geolocation, device identifiers, browsing/search history, cookies;

18. Usage information: activity on the platform, content interactions;

19. Device information: device type/model, IP address, carrier, OS, screen resolution, file/app types, keystroke patterns, audio settings, battery state, advertising IDs;

20. Location data: approximate location via IP or SIM, location tags in content;

21. Image and audio analysis: object/scene detection, facial/body features, spoken text, faceprints, voiceprints;

22. Metadata: timestamps, content creation details, content formatting, account links, hashtags, captions;

23. Cookies and tracking technologies: for analytics, functionality, advertising, and cross-device tracking;

24. Linked identifiers: cross-device and cross-platform activity via account/device info.[40]

72. The types of information listed in paragraphs 70 and 71 define the term

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

[40] TikTok Inc., Privacy Policy (U.S.) (Aug. 19, 2024), https://www.tiktok.com/legal/page/us/privacy-policy/en.

"Private Data" as it is used throughout this Complaint.

73.    Private Data is substantially valuable. As Professor Paul M. Schwartz stated in a Harvard Law Review article:

> Personal information is an important currency in the new millennium. The monetary value of personal data is large and still growing, and corporate America is moving quickly to profit from the trend. Companies view this information as a corporate asset and have invested heavily in software that facilitates the collection of consumer information.[41]

74.    Studies also indicate that Private Data has genuine value. For example, in a study authored by Tim Morey, researchers studied the value that 180 internet users placed on keeping personal data secure.[42] Participants in the study valued contact information at around $4.20 per year, demographic data at around $3.00 per year, and web browsing histories at $52.00 per year.

75.    TikTok is an operator of a website and online service that is directed, in part, at children under 13 years old. During the Class Period, TikTok knew that children under 13 years old used the Full Access Platform. Although TikTok publicly claimed that children under 13 years old were not allowed to access the Full Access Platform and only used Kids Mode, the Defendants worked to increase the number of children under 13 using the Full Access Platform and the depth of their use by implementing an ineffective "age-gate" while attempting to popularize the application among children under 13. TikTok worked to boost the application's popularity among kids by hosting thousands of accounts featuring popular children's brands, including Bluey, Kidzbop, My Little Pony, Pokémon, and Cartoon Network. TikTok also hosted accounts for influencers and celebrities that are extremely popular among children under 13. As an example, one of these is for Eva Diana Kidisyuk, a 10-year-old child influencer whose

---

[41] Paul M. Schwartz, *Property, Privacy and Personal Data*, 117 Harv. L. Rev. 2055, 2056–57 (2004).
[42] Tim Morey, *What's Your Personal Data Worth?*, Design Mind (Jan. 18, 2011), https://web.archive.org/web/20131206000037/http://designmind.frogdesign.com/blog/what039s-your-personal-data-worth.html.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

videos include children's songs.[43] These types of accounts regularly post content knowingly and purposefully directed at children and are intended to attract children under the age of 13. These accounts are also "verified" accounts, meaning TikTok has reviewed the account, "confirmed the account belongs to the person or brand it represents," and determined the account to be "[n]otable."[44]

76.    As part of Defendants' efforts to maximize profits through the collection of children's data, Defendants created an intentionally ineffective age-gate. The age-gate creates only the pretense of protecting children and helps Defendants to "save face." In reality, it fails to prevent children from accessing the Full Access Platform.

77.    Defendants have required, since at least March 2019, that users input a day, month, and year of birth when creating a TikTok account. People in the United States who enter birthdates indicating that they are under 13 years old are offered Kids Mode. People who enter birthdates indicating that they are 13 years old or over are offered the Full Access Platform.

78.    TikTok gives children under 13 who are attempting to sign up an incentive to lie about their age and enter a fake date as their date of birth that would indicate that they are 13 years of age or older. Kids Mode allows users to view videos, but bars them from posting information publicly, messaging others on the application, or uploading their own content. Thus, children under 13 have an incentive to post a date as their birthday that exaggerates their age as doing so would allow them to participate fully in the application, including by uploading videos, posting information publicly, and messaging others.[45]

79.    TikTok encourages children under 13 to use fake birthdays by making large

---

[43] *See* Kids Diana Show (Mylittlepony.us), TikTok, https://www.tiktok.com/@kids.diana.show?lang=en (last visited July 10, 2025).

[44] *Verified accounts on TikTok*, TikTok, https://support.tiktok.com/en/using-tiktok/growing-your-audience/how-to-tell-if-an-account-is-verified-on-tiktok (last visited July 10, 2025).

[45] Research suggests that Kids Mode's "lack of child-directed content" and "frequent content repetition" may further "incentivize" children to abandon Kids Mode and sign up as an adult. *See* Olivia Figueira *et al.*, *When Kids Mode Isn't for Kids: Investigating TikTok's "Under 13" Experience*, arXiv:2507.00299v1 (2025), https://arxiv.org/html/2507.00299v1.

amounts of content intended for and directed at children under the age of 13 available on the Full Access Platform.

80.    Although TikTok could make an effort to verify users' ages when they sign up, the company willfully turns a blind eye to under-age users of the Full Access Platform. For example, according to allegations in the DOJ Complaint, TikTok has technology that can determine, using algorithms, a user's grade level based on the user's behavior and other factors. Although TikTok employs this technology to target age-groups with ads directed to people of certain ages, it has willfully and knowingly refused to employ it to make sure that children under 13 are not using the Full Access Platform.

81.    Defendants and their employees have known for years that children under 13 years of age misrepresent their birthdates in order to sign up for the Full Access Platform and have access to its more abundant features. In fact, Alex Zhi, one of TikTok's founders, confirmed in 2016 that the company knows that "a lot of users, especially top users, they are under 13."[46] A former TikTok employee has also stated that although employees flagged videos from children who appeared to be below 13 years of age, TikTok permitted them to stay on the Full Access Platform for weeks afterwards.[47] The DOJ's Complaint also discusses how TikTok's human moderators are well-aware that children under 13 years old use the Full Access Platform.[48]

82.    From March 2019 to at least May 2022, TikTok also let users create accounts without having to enter any birthdate. Instead, it let users further evade its already meaningless age-gate by logging into the application with credentials from third-parties that required no entry of a birthdate, like Google and Instagram.

83.    TikTok does not notify parents or ask for their consent whether their

---

[46] TechCrunch, *From Brush to Canvas with Alex Zhu of Musical.ly* at 8:58-11:12, YouTube (Dec. 6, 2016) https://www.youtube.com/watch?v=ey15v81pwII; *see also* Jon Russell, *Musical.ly defends its handling of young users, as it races past 40M MAUS*, TechCrunch (Dec. 6, 2016, 8:12 AM), https://techcrunch.com/2016/12/06/musically-techcrunch-disrupt-london/.
[47] *Id.*
[48] *See also* Bobby Allyn *et al.*, *TikTok executives know about app's effect on teens, lawsuit documents allege*, NPR (Oct. 11, 2024, 5:30 AM), https://www.npr.org/2024/10/11/g-s1-27676/tiktok-redacted-documents-in-teen-safety-lawsuit-revealed.

1    children are directed to Kids Mode or not. Defendants accordingly collected and held

2    Private Data of children without parental notice or consent.

3        84.    Even for users of Kids Mode, Defendants collect extensive Private Data

4    without parental notice or consent. Defendants collect a Kids Mode user's username,

5    password, claimed day, month, and year of birth, and email address.[49] They may also

6    collect IP addresses, unique device identifiers such as device ID, web browser types,

7    country-level location data, certain information regarding activity on the application,

8    like the videos a user watched, the time users spend on the application, and other general

9    usage information (collectively "Kids Mode Private Data").[50] Defendants, during the

10    Class Period, also combined the data they collected from children using Kids Mode with

11    persistent identifiers and exploited that data to create profiles on children, and shared

12    Kids Mode Private Information regarding children under 13 years of age, including

13    persistent identifiers, with third parties without obtaining a parent's consent.

14        85.    TikTok also obstructs parental efforts to delete children's personal

15    information. The DOJ Complaint alleges that TikTok made it extremely complicated for

16    parents to request that their child's account be deleted along with their child's

17    information. It also alleges that Defendants often failed to fulfill parents' requests even

18    if a parent prevailed in navigating TikTok's complicated deletion-request procedure.

19        86.    TikTok also fails to provide adequate notice on the application and on the

20    website regarding what data it obtains from children under 13, how it employs that data,

21    including in advertising, parental rights to delete children's information or review it, and

22    its corporate data disclosure policies.

23    //

24    //

25    //

26    //

27

28    ---

[49] *Children's Privacy Policy*, TikTok, https://www.tiktok.com/legal/page/global/privacy-policy-for-younger-users/en (last updated Oct. 1, 2024).
[50] *Id.*

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**C.**    **Defendants' Conduct Weakened Parents' Ability to Protect Their Kids, Invaded Plaintiffs' and Class Members' Privacy Rights, and Caused Plaintiffs and Class Members Substantial and Continuing Injuries.**

87.    Parents have a fundamental interest in the welfare of their children and controlling who may interact with their children and how they may do so. Parents' interests in their children are among society's most important and foundational liberty interests. Defendants' conduct, as alleged above, also violates the privacy rights and reasonable privacy expectations of Plaintiffs and Class Members.

88.    The conduct of Defendants alleged above is outrageous. Defendants intentionally and knowingly (1) instituted an ineffective age-gate, (2) refused to adopt readily available systems that could detect users under the age of 13 using the Full Access Platform, and (3) adopted procedures designed to impede and prevent parents from having their children's data deleted.

89.    These unlawful and intentional acts have severely injured Plaintiffs and Class Members. Plaintiffs and Class Members have suffered actual damages, including, but not limited to, losing control over their own valuable property.

90.    Defendants have been unjustly enriched from their unlawful gathering and exploitation of Plaintiffs and Class Members' Private Data and Kids Mode Private Data. The TikTok application now uses algorithms powered in part by the information Defendants unlawfully gained about children under 13 years of age. Defendants also can now harness that data to further market to children under the age of 13 and attract advertisers seeking to cater to these young people. The Private Data and Kids Mode Private Data that Defendants obtained will also empower Defendants to exploit that data throughout these children's lifetimes.

91.    Plaintiffs and the Members of the Classes also suffered economic injury when Defendants' collection and exploitation of their Private Data and Kids Mode Private Data. Defendants' exploitation of Plaintiffs and Class Members' Private Data

and Kids Mode Private Data has reduced the value of that data to Plaintiffs and Class Members and led Plaintiffs and Class Members to suffer economic losses from which they can never be made whole.

92.    Plaintiffs and Class Members have no adequate remedy at law because damages, in and of themselves, cannot protect Plaintiffs and the Class Members from Defendants' misuse of their Private Data and Kids Mode Private Data. To the extent that money damages would constitute an adequate remedy at law that would prevent recovery, Plaintiffs and Class Members assert their claims for equitable relief requested here as an alternative remedy, pending the court's determination on whether a remedy at law is available. Plaintiffs and Class Members thus seek a permanent injunction that (1) bars Defendants from directly or indirectly exploiting, profiting from, using, or benefiting from Plaintiffs and Class Members' Private Data or Kids Mode Private Data that they unlawfully collected, including barring Defendants from using any Private Data, Kids Mode Private Data, or data profiles of Plaintiffs or Class Members that Defendants created, entirely or partly, on wrongfully gathered data in order to serve behavioral or targeted advertising; (2) requires Defendants to destroy Plaintiffs and Class Members' Private Data that Defendants gathered in violation of COPPA and the COPPA Rule; (2) requires Defendants to notify all Plaintiffs and Class Members that their Private Data was collected and has since been destroyed; and (3) requires Defendants to relinquish all of their ill-gotten gains.

## V.    ALLEGATIONS RELATING TO PLAINTIFFS

### A.    Plaintiff P.B., a minor, by and through their parent, Brittany Santisi

93.    Plaintiff Brittany Santisi brings this action on behalf of P.B., her child.

94.    P.B. created an account on the application when they were approximately 11 years old. P.B. began viewing content on the TikTok application shortly after creating the account.

95.    Defendants collected P.B.'s Private Data during the Class Period in order to monitor and track P.B.'s activity and use the Private Data Defendants collected for

advertising and the sale of advertising.

96.   Defendants gathered data from P.B.'s use of the TikTok application and their profile that established that P.B. was younger than 13 years of age. Defendants are maintaining or capable of creating a DYD file that contains part, but not all, of the data it gathered regarding P.B.

97.   The Private Data that Defendants collected during the Class Period from P.B. included the videos P.B. viewed, the amount of time P.B. spent viewing each video, and the amount of time that P.B. expended on the TikTok application. Defendants also gathered and maintained P.B.'s actions on the application, including P.B.'s posts, recently deleted posts, comments that P.B. made, direct messages that P.B. sent, P.B.'s "likes," as well as P.B.'s share, watch, login, search, and browsing history, including on TikTok Shop.

98.   Defendants collected data about P.B.'s profile, including P.B.'s profile photo, telephone number, name, followers list, following list, username, and the "bio description." Defendants also gathered P.B.'s "Off TikTok Activity."

99.   Defendants also combined the Private Data it gathered from P.B. with persistent identifiers to create a profile for P.B.

100.   Defendants never obtained consent from a parent and legal guardian of P.B. before or during the time when they gathered and exploited P.B.'s Private Data.

101.   In the future, P.B. is likely to use the TikTok application. P.B. accordingly seeks protection from Defendants' repeated and ongoing COPPA violations.

**B.     Plaintiff J.S., a minor, by and through their parent, Brittany Santisi**

102.   Plaintiff Brittany Santisi brings this action on behalf of J.S., her child.

103.   J.S. created an account on the application when they were approximately 11 years old. J.S. began viewing content on the TikTok application shortly after creating the account.

104.   Defendants collected J.S.'s Private Data during the Class Period in order to monitor and track J.S.'s activity and use the Private Data Defendants collected for

advertising and the sale of advertising.

105.   Defendants gathered data from J.S.'s use of the TikTok application and their profile that established that J.S. was younger than 13 years of age. Defendants are maintaining or capable of creating a DYD file that contains part, but not all, of the data it gathered regarding J.S.

106.   The Private Data that Defendants collected during the Class Period from J.S. included the videos J.S. viewed, the amount of time J.S. spent viewing each video, and the amount of time that J.S. expended on the TikTok application. Defendants also gathered and maintained J.S.'s actions on the application, including J.S.'s posts, recently deleted posts, comments that J.S. made, direct messages that J.S. sent, J.S.'s "likes," as well as J.S.'s share, watch, login, search, and browsing history, including on TikTok Shop.

107.   Defendants collected data about J.S.'s profile, including J.S.'s profile photo, telephone number, name, followers list, following list, username, and the "bio description." Defendants also gathered J.S.'s "Off TikTok Activity."

108.   Defendants also combined the Private Data it gathered from J.S. with persistent identifiers to create a profile for J.S.

109.   Defendants never obtained consent from a parent and legal guardian of J.S. before or during the time when they gathered and exploited J.S.'s Private Data.

110.   In the future, J.S. is likely to use the TikTok application. J.S. accordingly seeks protection from Defendants' repeated and ongoing COPPA violations.

**C.    Plaintiff J.F., a minor, by and through their parent, Brittany Santisi**

111.   Plaintiff Brittany Santisi brings this action on behalf of J.F., her child.

112.   J.F. created an account on the application when they were approximately 10 years old. J.F. began viewing content on the TikTok application shortly after creating the account.

113.   Defendants collected J.F.'s Private Data during the Class Period in order to monitor and track J.F.'s activity and use the Private Data Defendants collected for

1   advertising and the sale of advertising.

2      114.   Defendants gathered data from J.F.'s use of the TikTok application and

3   their profile that established that J.F. was younger than 13 years of age. Defendants are

4   maintaining or capable of creating a DYD file that contains part, but not all, of the data

5   it gathered regarding J.F.

6      115.   The Private Data that Defendants collected during the Class Period from

7   J.F. included the videos J.F. viewed, the amount of time J.F. spent viewing each video,

8   and the amount of time that J.F. expended on the TikTok application. Defendants also

9   gathered and maintained J.F.'s actions on the application, including J.S.'s posts, recently

10  deleted posts, comments that J.F. made, direct messages that J.F. sent, J.F.'s "likes," as

11  well as J.F.'s share, watch, login, search, and browsing history, including on TikTok

12  Shop.

13     116.   Defendants collected data about J.F.'s profile, including J.F.'s profile

14  photo, telephone number, name, followers list, following list, username, and the "bio

15  description." Defendants also gathered J.F.'s "Off TikTok Activity."

16     117.   Defendants also combined the Private Data it gathered from J.F. with

17  persistent identifiers to create a profile for J.F.

18     118.   Defendants never obtained consent from a parent and legal guardian of J.F.

19  before or during the time when they gathered and exploited J.F.'s Private Data.

20     119.   In the future, J.F. is likely to use the TikTok application. J.F. accordingly

21  seeks protection from Defendants' repeated and ongoing COPPA violations.

22     **D.      Plaintiff D.P. a minor, by and through their parent, Tammy Padgett**

23     120.   Plaintiff Tammy Padgett brings this action on behalf of D.P., her child.

24     121.   D.P. created an account on the application when they were approximately

25  11 years old. D.P. began viewing content on the TikTok application shortly after creating

26  the account.

27     122.   Defendants collected D.P.'s Private Data during the Class Period in order

28  to monitor and track D.P.'s activity and use the Private Data Defendants collected for

advertising and the sale of advertising.

123.   Defendants gathered data from D.P.'s use of the TikTok application and their profile that established that D.P. was younger than 13 years of age. Defendants are maintaining or capable of creating a DYD file that contains part, but not all, of the data it gathered regarding D.P.

124.   The Private Data that Defendants collected during the Class Period from D.P. included the videos D.P. viewed, the amount of time D.P. spent viewing each video, and the amount of time that D.P. expended on the TikTok application. Defendants also gathered and maintained D.P.'s actions on the application, including D.P.'s posts, recently deleted posts, comments that D.P.  made, direct messages that D.P. sent, D.P.'s "likes," as well as D.P.'s share, watch, login, search, and browsing history, including on TikTok Shop.

125.   Defendants collected data about D.P.'s profile, including D.P.'s profile photo, telephone number, name, followers list, following list, username, and the "bio description." Defendants also gathered D.P.'s "Off TikTok Activity."

126.   Defendants also combined the Private Data it gathered from D.P. with persistent identifiers to create a profile for D.P.

127.   Defendants never obtained consent from a parent and legal guardian of C.M. before or during the time when they gathered and exploited D.P.'s Private Data.

128.   In the future, D.P.  is likely to use the TikTok application. D.P. accordingly seeks protection from Defendants' repeated and ongoing COPPA violations.

**E.     Plaintiff C.H., a minor, by and through their parent, Arthur Henry**

129.   Plaintiff Arthur Henry brings this action on behalf of C.H., his child.

130.   C.H. created an account on the application when they were approximately 9 years old. C.H. began viewing content on the TikTok application shortly after creating the account.

131.   Defendants collected C.H.'s Private Data during the Class Period in order to monitor and track C.H.'s activity and use the Private Data Defendants collected for

advertising and the sale of advertising.

132.   Defendants gathered data from C.H.'s use of the TikTok application and their profile that established that C.H. was younger than 13 years of age. Defendants are maintaining or capable of creating a DYD file that contains part, but not all, of the data it gathered regarding C.H.

133.   The Private Data that Defendants collected during the Class Period from C.H. included the videos C.H. viewed, the amount of time C.H. spent viewing each video, and the amount of time that C.H. expended on the TikTok application. Defendants also gathered and maintained C.H.'s actions on the application, including C.H.'s posts, recently deleted posts, comments that C.H. made, direct messages that C.H. sent, C.H.'s "likes," as well as C.H.'s share, watch, login, search, and browsing history, including on TikTok Shop.

134.   Defendants collected data about C.H.'s profile, including C.H.'s profile photo, telephone number, name, followers list, following list, username, and the "bio description." Defendants also gathered C.H.'s "Off TikTok Activity."

135.   Defendants also combined the Private Data it gathered from C.H. with persistent identifiers to create a profile for C.H.

136.   Defendants never obtained consent from a parent and legal guardian of C.H. before or during the time when they gathered and exploited C.H.'s Private Data.

137.   In the future, C.H. is likely to use the TikTok application. C.H. accordingly seeks protection from Defendants' repeated and ongoing COPPA violations.

**F.     Plaintiff D.K., a minor, by and through their parent, Karin Robinson**

138.   Plaintiff Karin Robinson brings this action on behalf of D.K., her child.

139.   D.K. created an account on the application when they were approximately 12 years old. D.K. began viewing content on the TikTok application shortly after creating the account.

140.   Defendants collected D.K.'s Private Data during the Class Period in order to monitor and track D.K.'s activity and use the Private Data Defendants collected for

advertising and the sale of advertising.

141.   Defendants gathered data from D.K.'s use of the TikTok application and their profile that established that D.K. was younger than 13 years of age. Defendants are maintaining or capable of creating a DYD file that contains part, but not all, of the data it gathered regarding D.K.

142.   The Private Data that Defendants collected during the Class Period from D.K. included the videos D.K. viewed, the amount of time D.K. spent viewing each video, and the amount of time that D.K. expended on the TikTok application. Defendants also gathered and maintained D.K.'s actions on the application, including D.K.'s posts, recently deleted posts, comments that D.K. made, direct messages that D.K. sent, D.K.'s "likes," as well as D.K.'s share, watch, login, search, and browsing history, including on TikTok Shop.

143.   Defendants collected data about D.K.'s profile, including D.K.'s profile photo, telephone number, name, followers list, following list, username, and the "bio description." Defendants also gathered D.K.'s "Off TikTok Activity."

144.   Defendants also combined the Private Data it gathered from D.K. with persistent identifiers to create a profile for D.K.

145.   Defendants never obtained consent from a parent and legal guardian of D.K. before or during the time when they gathered and exploited D.K.'s Private Data.

146.   In the future, D.K. is likely to use the TikTok application. D.K. accordingly seeks protection from Defendants' repeated and ongoing COPPA violations.

**G.    Plaintiff G.K., a minor, by and through their parent, Karin Robinson**

147.   Plaintiff Karin Robinson brings this action on behalf of G.K., her child.

148.   G.K. created an account on the application when they were approximately 9 years old. G.K. began viewing content on the TikTok application shortly after creating the account.

149.   Defendants collected G.K.'s Private Data during the Class Period in order to monitor and track G.K.'s activity and use the Private Data Defendants collected for

advertising and the sale of advertising.

150.   Defendants gathered data from G.K.'s use of the TikTok application and their profile that established that G.K. was younger than 13 years of age. Defendants are maintaining or capable of creating a DYD file that contains part, but not all, of the data it gathered regarding G.K.

151.   The Private Data that Defendants collected during the Class Period from G.K. included the videos G.K. viewed, the amount of time G.K. spent viewing each video, and the amount of time that G.K. expended on the TikTok application. Defendants also gathered and maintained G.K.'s actions on the application, including G.K.'s posts, recently deleted posts, comments that G.K. made, direct messages that G.K. sent, G.K.'s "likes," as well as G.K.'s share, watch, login, search, and browsing history, including on TikTok Shop.

152.   Defendants collected data about G.K.'s profile, including G.K.'s profile photo, telephone number, name, followers list, following list, username, and the "bio description." Defendants also gathered G.K.'s "Off TikTok Activity."

153.   Defendants also combined the Private Data it gathered from G.K. with persistent identifiers to create a profile for G.K.

154.   Defendants never obtained consent from a parent and legal guardian of G.K. before or during the time when they gathered and exploited G.K.'s Private Data.

155.   In the future, G.K. is likely to use the TikTok application. G.K. accordingly seeks protection from Defendants' repeated and ongoing COPPA violations.

**H.     Plaintiff T.W., a minor, by and through their parent, Rachel Smith**

156.   Plaintiff Rachel Smith brings this action on behalf of T.W., her child.

157.   T.W. created an account on the application when they were approximately 9 years old. T.W. began viewing content on the TikTok application shortly after creating the account.

158.   Defendants collected T.W.'s Private Data during the Class Period in order to monitor and track T.W.'s activity and use the Private Data Defendants collected for

advertising and the sale of advertising.

159.    Defendants gathered data from T.W.'s use of the TikTok application and their profile that established that T.W. was younger than 13 years of age. Defendants are maintaining or capable of creating a DYD file that contains part, but not all, of the data it gathered regarding T.W.

160.    The Private Data that Defendants collected during the Class Period from T.W. included the videos T.W. viewed, the amount of time T.W. spent viewing each video, and the amount of time that T.W. expended on the TikTok application. Defendants also gathered and maintained T.W.'s actions on the application, including T.W.'s posts, recently deleted posts, comments that T.W. made, direct messages that T.W. sent, T.W.'s "likes," as well as T.W.'s share, watch, login, search, and browsing history, including on TikTok Shop.

161.    Defendants collected data about T.W.'s profile, including T.W.'s profile photo, telephone number, name, followers list, following list, username, and the "bio description." Defendants also gathered T.W.'s "Off TikTok Activity."

162.    Defendants also combined the Private Data it gathered from T.W. with persistent identifiers to create a profile for T.W.

163.    Defendants never obtained consent from a parent and legal guardian of T.W. before or during the time when they gathered and exploited T.W.'s Private Data.

164.    In the future, T.W. is likely to use the TikTok application. T.W. accordingly seeks protection from Defendants' repeated and ongoing COPPA violations.

## I.    Plaintiff A.K., a minor, by and through their parent, Katherine Knight

165.    Plaintiff Katherine Knight brings this action on behalf of A.K., her child.

166.    A.K. created an account on the application when they were approximately 6 years old. A.K. began viewing content on the TikTok application shortly after creating the account.

167.    Defendants collected A.K.'s Private Data during the Class Period in order

1    to monitor and track A.K.'s activity and use the Private Data Defendants collected for

2    advertising and the sale of advertising.

3    168.   Defendants gathered data from A.K.'s use of the TikTok application and

4    their profile that established that A.K. was younger than 13 years of age. Defendants are

5    maintaining or capable of creating a DYD file that contains part, but not all, of the data

6    it gathered regarding A.K.

7    169.   The Private Data that Defendants collected during the Class Period from

8    A.K. included the videos A.K. viewed, the amount of time A.K. spent viewing each

9    video, and the amount of time that A.K. expended on the TikTok application. Defendants

10    also gathered and maintained A.K.'s actions on the application, including A.K.'s posts,

11    recently deleted posts, comments that A.K. made, direct messages that A.K. sent, A.K.'s

12    "likes," as well as A.K.'s share, watch, login, search, and browsing history, including on

13    TikTok Shop.

14    170.   Defendants collected data about A.K.'s profile, including A.K.'s profile

15    photo, telephone number, name, followers list, following list, username, and the "bio

16    description." Defendants also gathered A.K.'s "Off TikTok Activity."

17    171.   Defendants also combined the Private Data it gathered from A.K. with

18    persistent identifiers to create a profile for A.K.

19    172.   Defendants never obtained consent from a parent and legal guardian of

20    A.K. before or during the time when they gathered and exploited A.K.'s Private Data.

21    173.   In the future, A.K. is likely to use the TikTok application. A.K. accordingly

22    seeks protection from Defendants' repeated and ongoing COPPA violations.

23    **VI.    ESTOPPEL AND TOLLING**

24    **A.    Estoppel**

25    174.   Despite their duties and obligations under COPPA and the 2019 Permanent

26    Injunction, Defendants failed to provide notice of the collection and use of the personal

27    information and obtain verifiable consent in breach and violation thereof.

28    175.   Defendants therefore are estopped from relying on any statutes of

1  limitations in defense of this action.

2  **B.    Discovery Rule Tolling**

3  176.   No exercise of reasonable diligence by Plaintiffs or Class Members could
4  have discovered Defendants' conduct. Defendants, in fact, publicly purported to be
5  following the terms of the 2019 Permanent Injunction, when in reality, Defendants were
6  not. Plaintiffs and Class Members did not learn, and did not become aware of facts that
7  would have led a reasonable person to suspect, that Defendants were conducting
8  themselves as alleged in this Complaint. Simply put, Plaintiffs and Class Members had
9  no way of knowing about Defendants' conduct, including their unlawful and wrongful
10 gathering and exploitation of Plaintiffs' and Class Members' Private Data and Kids
11 Mode Private Data.

12 177.   Accordingly, the discovery rule tolls all applicable statutes of limitation
13 regarding Plaintiffs' and Class Members' claims.

14 **C.    Tolling of Statute of Limitations**

15 178.   Defendants concealed their actions, and accordingly the existence of
16 Plaintiffs' and Class Members' claims, by failing, in violation of COPPA and societal
17 norms, to (1) provide notice of Defendants' collection and use of Plaintiffs' and Class
18 Members' Private Data and Kids Mode Private Data, and (b) obtain verifiable parental
19 consent.

20 179.   Upon information and belief, Defendants intended to conceal Plaintiffs'
21 and Class Members' facts and claims from Plaintiffs and Class Members, who were
22 unaware of the facts alleged in this Complaint without any fault or lack of diligence on
23 their part, and who could not have reasonably discovered Defendants' actions alleged in
24 this Complaint.

25 180.   For these reasons, any statute of limitations that would otherwise apply to
26 Plaintiffs' or Class Members' claims should be tolled.

27 **VII.   CLASS ACTION ALLEGATIONS**

28 181.   Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3),

Plaintiffs bring this action as a class action with respect to the Classes described below.

182.   The following persons or entities are excluded from the Classes described below: (a) Defendants and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (b) persons who properly execute and file a timely request for exclusion from the Class; (c) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

183.   The Class Period is defined as March 28, 2019 to the present.

## A.     State Classes:

### 1.      The Arizona Class

184.   Plaintiffs D.K. and G.K., through their parent, seek class certification of a claim for violation of the Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1521, *et seq*., as well as a common law claims of negligence and unjust enrichment, on behalf of an Arizona class defined as follows:

> All persons residing in the State of Arizona (who were younger than 13 years old when they first used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 2.      The Illinois Class

185.   Plaintiff T.W., through their parent, seeks class certification for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq*,, as well as a common law claim for negligence, on behalf of an Illinois class defined as follows:

> All persons residing in the State of Illinois (who were younger than 13 years old when they first used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 3. The Louisiana Class

186.    Plaintiff C.H., through their parent, seeks class certification for violation of the Louisiana Unfair Trade Practices and Consumer Protection Act, La. Stat. Ann. § 51:1405, *et seq.*, as well as a common law claim of negligence, on behalf of a Louisiana class defined as follows:

> All persons residing in the State of Louisiana (who were younger than 13 years old when they first used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 4. The North Carolina Class

187.    Plaintiff D.P., through their parent, seeks class certification for the violation of the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1.1, *et seq.*, as well as a common law claim of negligence on behalf of a North Carolina class defined as follows:

> All persons residing in the State of North Carolina (who were younger than 13 years old when they first used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 5. The Ohio Class

188.    Plaintiffs P.B., J.S., and J.F., through their parent, seek class certification for the violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345, *et*

*seq.,* as well as a common law claim of negligence, on behalf of an Ohio class defined as follows:

> All persons residing in the State of Ohio (who were younger than 13 years old when they first used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 6.    The Georgia Class

189.   Plaintiff A.K., through their parent, seeks class certification for the violation of the Georgia Fair Business Practices Act, GA. Code Ann. § 10-1-390, *et seq.*, as well as a common law claim of negligence, on behalf of an Georgia class defined as follows:

> All persons residing in the State of Georgia (who were younger than 13 years old when they first used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

190.   Plaintiffs reserve the right to modify or refine any of the Class definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

191.   Collectively, the State Classes are referred to herein as "the Classes" and their collective membership as the "Members of the Classes."

192.   **Ascertainability**. The proposed Classes are readily ascertainable because they are defined using objective criteria so as to allow class Members to determine if they are part of a Class. Further, the Classes can be identified through records maintained by Defendants.

193.   **Numerosity (Rule 23(a)(1))**. The Classes are so numerous that joinder of individual Members herein is impracticable. The exact number of Members of the

Classes, as herein identified and described, is not known, but all public estimates confirm that TikTok has collected information on millions of children.

194. **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members, including the following:

a. Whether Defendants collected the Private Information and Kids Mode Private Information of children under 13;

b. Whether Defendants operate a website or online service directed at children under the age of 13 as defined by COPPA;

c. Whether Defendants had knowledge they were collecting the Private Information and Kids Mode Private Information of children under 13;

d. Whether Defendants notified parents as required by COPPA prior to collecting the Private Information and Kids Mode Private Information of children under 13;

e. Whether Defendants obtained verifiable parental consent as required by COPPA prior to collecting the Private Information and Kids Mode Private Information of children under 13;

f. Whether the collection of Private Information and Kids Mode Private Information of children is highly offensive to a reasonable person;

g. Whether the collection of Private Information and Kids Mode Private Information of children without parental consent is sufficiently serious and unwarranted as to constitute an egregious breach of social norms;

h. Whether Defendants' conduct was unfair;

i. Whether Defendants' conduct was unlawful;

j. Whether Defendants' conduct violated the consumer protection acts of Arizona, Georgia, Illinois, Louisiana, North Carolina, and Ohio;

k.   Whether Plaintiffs and the Class are entitled to monetary damages and the measure of those damages;

l.   Whether Defendants were unjustly enriched by their conduct under the law of Arizona and Louisiana;

m.   Whether Plaintiffs and the Class are entitled to injunctive or other equitable relief.

195.   **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other Members of the proposed Classes. Plaintiffs and Members of the Classes (as applicable) suffered an invasion of privacy and injuries as a result of Defendants' wrongful conduct that is uniform across the Classes.

196.   **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Members of the Classes, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other Members of the Classes.

197.   **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all Members of the Classes is impracticable. The prosecution of separate actions by individual Members of the Classes would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to Members of the Classes, and would be dispositive of the interests of the other Members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication,

economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

198.   Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Members of the Classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

199.   Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief, if any, that may be awarded by the Court is appropriate as to the Classes as a whole.

200.   Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## VIII.  <u>CLAIMS FOR RELIEF</u>

### A.    ARIZONA CLAIMS

**COUNT I**
**ARIZONA CONSUMER FRAUD ACT,**
**ARIZ. REV. STAT. § 44-1521, *et seq.***
**(Against all Defendants by Plaintiffs D.K. and**
**G.K., by and through their Parent, on Behalf of**
**Themselves and the Arizona Class)**

201.   Plaintiffs D.K. and G.K., minors, by and through their parent, Karin Robinson ("Arizona Plaintiffs"), on behalf of themselves and Members of the Arizona Class, re-allege Paragraphs 1-200 as if fully set forth herein.

202.   This claim is asserted against Defendants pursuant to the Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1521, *et seq.*

203.   The ACFA prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with

intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby. . . ." Ariz. Rev. Stat. § 44-1522(A).

204. Any person who has been harmed by practices banned under Ariz. Rev. Stat. § 44-1522 may bring a claim pursuant to Ariz. Rev. Stat. § 44-1533.

205. Arizona Plaintiffs, Arizona Class Members, and Defendants are each a "person" as defined by Ariz. Rev. Stat. § 44-1521.

206. Through their conduct as alleged above, Defendants have engaged in deceptive, unlawful, and unfair acts in connection with the sale of merchandise, as prohibited by Ariz. Rev. Stat. § 14-1522, within the State of Arizona.

207. The ACFA states that "[i]t is the intent of the legislature, in construing subsection A, that the courts may use as a guide interpretations given by the Federal Trade Commission and the federal courts to 15 United States Code sections 45, 52 and 55(a)(1)." Ariz. Rev. Stat. § 44-1522(C).

208. Defendants engaged in "unfair" acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of D.K., G.K., and the Arizona Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitute unfair practices. The harm these practices caused to D.K. and G.K., and Arizona Class Members outweigh their utility, if any.

209. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years old that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

210.   TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

211.   As outlined herein, Defendants at all times had actual knowledge of their non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge that they were collecting Private Information from users under the age of 13 including D.K. G.K., and Arizona Class Members for purposes of tracking, profiling, and targeting of those children for lucrative behavioral advertising.

212.   As outlined herein, Defendants intentionally designed TikTok to, among other things, attract children under 13 by making child-directed content available to them so that TikTok could collect the personal information of those children for substantial commercial gain.

213.   TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

214.   Defendants are considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

215.   In particular, Defendants systematically collected and/or used personal

information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

    a.   Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

    b.   Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

    c.   Failing to obtain verifiable parental consent before any collection or use of personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

    d.   Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

216.  Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair . . . act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the ACFA.

217.  Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of the ACFA which is modeled after, proscribes the same conduct

as, and gives deference to the definitions of the FTC Act.

218.  The actions committed by Defendants were unfair, immoral, oppressive, unethical and unscrupulous. Defendants' conduct was substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. The Arizona Plaintiffs and Members of the Arizona Class were unable to avoid injury because Defendants deliberately took advantage of their consumers' – in this case, children under the age of 13 – lack of knowledge, experience, ability, and/or capacity.

219.  Defendants knew or recklessly disregarded their violations of Ariz. Rev. Stat. § 44-1521, *et seq.* by willfully committing the unlawful and unfair acts outlined throughout this complaint

220.  Defendants' actions were a substantial factor causing harm, injury in fact, and actual damages to the Arizona Plaintiffs and Members of the Arizona Class.

221.  Arizona Plaintiffs have standing to bring their claims under the ACFA. The Arizona Plaintiffs and Members of the Arizona Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, "benefit-of-the-bargain" damages, the loss of the value and/or diminishment in value of their personal information, and the loss of the ability to control the use of their personal information.

222.  Arizona Plaintiffs and Members of the Arizona Class suffered "benefit-of-the-bargain" injuries and damages as a direct and proximate result of Defendants' unfair and unlawful business practices. The Arizona Plaintiffs and Members of the Arizona Class did not receive the full benefit of the bargain, and instead received services from TikTok that were less valuable than the services they would have received if TikTok had abided by COPPA and the COPPA Rule.

223.  The Arizona Plaintiffs and Members of the Arizona Class, therefore, were damaged in an amount at least equal to the difference in value of the TikTok service that the Arizona Plaintiffs and Members of the Arizona Class received (for example. where TikTok collected and used children's personal information without notifying their

parents or gaining their parents' consent) and the value of the TikTok service that Arizona Plaintiffs' and Arizona Class Members would have received if TikTok had abided by COPPA and the COPPA Rule (and, for example, not collected and used children's personal information without notifying their parents or gaining their parents' consent).

224.   As a direct and proximate result of TikTok's unlawful and unfair business acts and practices, Arizona Plaintiffs and Arizona Class Members also suffered "right to exclude" injuries and damages.

225.   The Arizona Plaintiffs and Members of the Arizona Class have a property interest in the personal information collected by TikTok. Arizona Plaintiffs and Class Members suffered an economic injury because they were deprived of their right to exclude TikTok from their personal information.

226.   The Arizona Plaintiffs and Members of the Arizona Class's damages may also be measured by the amount of monetary compensation that TikTok would have to provide to parents to gain their consent to collect and use their children's personal information.

227.   The Arizona Plaintiffs and Members of the Arizona Class also suffered damages because the Defendants' unfair and unlawful acts and practices diminished the value of their personal information.

228.   As outlined herein, there is tangible value in the Arizona Plaintiffs' and Members of the Arizona Class's personal information. The Arizona Plaintiffs and Members of the Arizona class have lost the opportunity to receive value in exchange for their personal information.

229.   Defendants' monetization of the Arizona Plaintiffs' and Members of the Arizona Class's personal information demonstrates that there is a market for their personal information.

230.   The Arizona Plaintiffs' and Members of the Arizona Class's personal information is now in the possession of Defendants, who have used and will use it for

1  their financial gain.

2  231.   Pursuant to Ariz. Rev. Stat. § 44-1533, Arizona Plaintiffs request that the

3  Court restore to Plaintiffs and the Class, in the form of restitution, all money TikTok

4  may have acquired as result of its unlawful and unfair business practices.

5  232.   Defendants' retention of the Arizona Plaintiffs' and Members of the

6  Arizona Class's personal information presents a continuing risk to them as well as the

7  general public. The Arizona Plaintiffs and Members of the Arizona Class seek relief for

8  the injuries they have suffered as a result of Defendants' unfair and unlawful acts and

9  practices, as provided by Ariz. Rev. Stat. § 44-1521 *et seq.* and applicable law, including

10 restitution and attorneys' fees.

11 233.   Arizona Plaintiffs lack an adequate remedy at law. It is unclear whether an

12 award of damages can or will adequately remedy the Arizona Plaintiffs' monetary

13 losses. The restitution that Arizona Plaintiffs seek under the ACFA is not the same

14 remedy as disgorgement for unjust enrichment. Furthermore, restitution under the

15 ACFA is more prompt, efficient, and certain than the monetary damages that Plaintiffs

16 seek.

17 234.   Arizona Plaintiffs also lack an adequate remedy at law because TikTok's

18 refusal to abide by the 2019 Permanent Injunction is a future harm. Namely, TikTok

19 continues to profit from its unlawful business practices at the expense of the privacy of

20 children, and TikTok has failed to implement adequate age gates, to identify and remove

21 underage users of non-Kids Mode accounts, to delete data, even upon parental request,

22 has taken steps to make deletion requests onerous, and has continued to collect data from

23 purportedly deleted accounts.

## COUNT II
## NEGLIGENCE
**(Against all Defendants by Plaintiffs D.K. and**
**G.K., by and through their Parent, on behalf**
**of Themselves and the Arizona Class)**

28 235.   The Arizona Plaintiffs and Arizona Class Members re-allege Paragraphs 1-

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1   200 as if fully set forth herein.

2      236.   At all relevant times, Defendants developed, set up, managed, maintained,

3   operated, supervised, controlled, and benefited from Arizona Plaintiffs' and Arizona

4   Class Members' use of TikTok.

5      237.   Defendants owed Arizona Plaintiffs and Arizona Class Members a duty to

6   exercise reasonable care in TikTok's development, setup, management, maintenance,

7   operation, supervision, and control to protect its under-13 users' personal information.

8      238.   Defendants also owed Arizona Plaintiffs and Arizona Class Members a

9   duty under COPPA not to collect, use, or disclose under-13 users' personal information

10  without notifying parents and obtaining verifiable parental consent.

11     239.   Arizona Plaintiffs and Arizona Class Members are within the class of

12  persons that COPPA was intended to protect.

13     240.   Defendants also owed a special relationship duty to Arizona Plaintiffs and

14  Arizona Class Members to protect them against harm caused by TikTok. Arizona

15  Plaintiffs and Arizona Class Members, as children, are comparatively vulnerable and

16  depend on Defendants for a safe and age-appropriate environment on TikTok, and

17  Defendants have the superior ability and control over TikTok to provide both safety and

18  an age-appropriate environment on its app. The special relationship Arizona Plaintiffs

19  and Arizona Class Members have with Defendants substantially benefits Defendants

20  through profits and growth in users and user activity.

21     241.   Defendants created TikTok and directed its activity through advertisements

22  to minor users, including users under 13 years old. This created a special duty to exercise

23  reasonable care to protect the minors from foreseeable harm while the minors were on

24  TikTok.

25     242.   Defendants have voluntarily undertaken a responsibility to keep children

26  safe on TikTok.

27     243.   Defendants are responsible not only for the result of their willful acts, but

28  also for injuries occasioned to Arizona Plaintiffs and Arizona Members by Defendants'

1    want of ordinary care and/or skill in the management of their property.

2    244.   Defendants operate a website or online service directed at children under

3    the age of 13, as defined by COPPA.

4    245.   Defendants had actual knowledge that children under 13, such as Arizona

5    Plaintiffs and Arizona Class Members, were using and would use the Full Access

6    Platform.

7    246.   Defendants invited, solicited, and encouraged the fact, extent, and manner

8    of Arizona Plaintiffs' and Arizona Class Members' use of TikTok.

9    247.   Defendants had actual knowledge that the use of TikTok (as developed, set

10    up, managed, maintained, supervised, and operated by Defendants) would result in

11    Defendants collecting and using Arizona Plaintiffs' and Arizona Class Members'

12    personal information.

13    248.   At all relevant times, Defendants had actual knowledge that TikTok (as

14    developed, setup, managed, maintained, supervised, and operated by that Defendant)

15    posed unreasonable risks of harm to youth such as Arizona Plaintiffs and Arizona Class

16    Members through the collection, use, and/or disclosure of their personal information.

17    Those risks were known and knowable, including in light of the multiple previous

18    violations of minor children's privacy on TikTok in the last decade.

19    249.   Defendants had actual knowledge that their under-13 users would attempt

20    to create regular accounts instead of only trying to create Kids Mode accounts.

21    250.   Defendants had actual knowledge that when under-13 users created regular

22    accounts instead of Kids Mode accounts, their personal information would be treated

23    without the adequate protections warranted for personal information of under-13 users

24    online.

25    251.   Defendants had actual knowledge that its "age gate" features were not

26    reasonably adequate to protect the privacy of children's information on TikTok.

27    252.   Due to Defendants' control over how youth set up accounts on TikTok,

28    Defendants injured Arizona Plaintiffs and Arizona Class Members by violating their

privacy.

253.    Defendants could have avoided Arizona Plaintiffs' and Arizona Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

254.    Imposing a duty on Defendants would benefit the community at large.

255.    Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Arizona Plaintiffs and Arizona Class Members.

256.    Defendants owed a heightened duty of care to under 13 users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to under 13 users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

257.    Defendants breached their duty of care that they owed Arizona Plaintiffs and Arizona Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

      a.    Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not adequately verify the age or identity of users or by adopting ineffective age and identity verification protocols,

      b.    Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice

had not been provided to parents and verifiable consent had not been obtained from parents,

    c.    Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

    d.    Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

258.   Defendants have breached their duty of care that they owed to Arizona Plaintiffs and Arizona Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

    a.    Failing to implement effective protocols to block users under the age of 13,

    b.    Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

    c.    Failing to implement effective parental controls.

259.   These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

260.   Defendants' violation of COPPA constitutes negligence per se.

261.   A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Arizona Plaintiffs.

262.   At all relevant times, Arizona Plaintiffs and Arizona Class Members used TikTok in the manner it was intended to be used.

263.   As a direct and proximate result of Defendants' breach of one or more of its duties, Arizona Plaintiffs and Arizona Class Members were harmed by Defendants' violation of Arizona Plaintiffs' and Arizona Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

264.   The harm to the Arizona Plaintiffs and Arizona Class Members is the type of harm that COPPA was intended to prevent.

265.   The Arizona Plaintiffs and Arizona Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

266.   Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Arizona Plaintiffs and Arizona Class Members.

267.   But for Defendants' violation of the applicable laws and regulations related to COPPA, Arizona Plaintiffs' and Arizona Class Members' personal information would not have been used, collected, or disclosed to third parties.

268.   As a direct and proximate result of Defendants' negligence per se, Arizona Plaintiffs and Arizona Class Members have been injured and are entitled to damages in an amount to be proven at trial.

269.   Arizona Plaintiffs demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III
## UNJUST ENRICHMENT
### (Against all Defendants by Plaintiffs D.K.
### and G.K., by and through their Parent, on
### Behalf of Themselves and the Arizona Class)

270.   The Arizona Plaintiffs and Arizona Class Members re-allege Paragraphs 1-

200 as if fully set forth herein.

271.   Defendants have realized millions of dollars in revenue through their unfair, unlawful and deceptive conduct alleged herein. Defendants have substantially profited from their collection and use of the Arizona Plaintiffs' and Class Members' Personal Information through targeted behavioral advertising and commercialization of their Personal Information.

272.   Defendants unfairly received monetary benefits from the Arizona Plaintiffs and Arizona Class Members. It would be inequitable and unjust to permit Defendants to retain the economic benefits they have obtained through advertising and commercialization derived from the Personal Information of Arizona Plaintiffs and Arizona Class Members.

273.   Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by Arizona Plaintiffs and all Class Members, through their unlawful, unfair, unauthorized, and impermissible use of the Personal Information of the Arizona Plaintiffs and Arizona Class Members, and allowing Defendants to retain the profits from their unlawful, unauthorized, and impermissible use of the Arizona Plaintiffs' and Arizona Class Members' Personal Information would be unjust and contrary to public policy.

274.   Arizona Plaintiffs and Arizona Class Members are therefore entitled to recover the amounts realized by Defendants at the expense of Arizona Plaintiffs and Arizona Class Members.

**B.    GEORGIA CLAIMS**

**COUNT IV**
**GEORGIA FAIR BUSINESS PRACTICES ACT**
**GA. CODE ANN. § 10-1-390 *et seq.***
**(Against all Defendants by Plaintiff A.K., by**
**and through their Parent, on Behalf**
**of Themselves and the Georgia Class)**

275.   Plaintiff A.K., a minor, by and through their parent, Katherine Knight ("Georgia Plaintiff"), on behalf of themselves and Members of the Georgia Class, re-

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

allege Paragraphs 1-200 as if fully set forth herein.

276.  The Georgia Plaintiff and Members of the Georgia Class are or were residents of Georgia and used TikTok while under the age of 13.

277.  Ga. Code Ann. § 10-1-393(a) provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

278.  At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Georgia in that Defendants each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Georgia.

279.  Defendants violated Ga. Code Ann. § 10-1-390, *et seq.* by engaging in the unfair acts or practices proscribed by Ga. Code Ann. § 10-1-393 as outlined herein.

280.  Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of the Georgia Plaintiff and Georgia Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to the Georgia Plaintiff and Georgia Class Members outweigh their utility, if any.

281.  As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years old that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

282.  TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights

of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

283.   Defendants each engaged in consumer-oriented acts through the offer, promotion, and/or distribution of the TikTok app, which significantly impacted the public because TikTok is used nationwide, including in Georgia, and there are millions of users, including the Georgia Plaintiff and Members of the Georgia Class.

284.   Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of children under 13 years old and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

285.   As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their collection of the personal information of the Georgia Plaintiff and the Georgia Class Members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

286.   As outlined herein, Defendants intentionally designed TikTok to, among other things, attract children under 13 by making child-directed content available to them so that TikTok could collect the personal information for substantial commercial gain.

287.   TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal

information of children.

288.    In particular, Defendants systematically collected and/or used personal information from children under 13 years old in violation of COPPA, and therefore the FTC Act, by:

     a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

     b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

     c.    Failing to obtain verifiable parental consent before any collection or use of personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

     d.    Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

289.    Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Ga. Code

Ann. § 10-1-390, *et seq.* Ga. Code Ann. § 10-1-391(b) states: "It is the intent of the General Assembly that this part be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. Section 45(a)(1)), as from time to time amended."

290.   Accordingly, Defendants engaged in unfair and unlawful acts or practices in violation of Ga. Code Ann. § 10-1-390, *et seq.*, which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

291.   Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, the Georgia Plaintiff and Members of the Georgia Class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13 years old—to their detriment.

292.   Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Ga. Code Ann. § 10-1-390, *et seq.*

293.   The Georgia Plaintiff and Members of the Georgia Class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to the Georgia Plaintiff and Members of the Georgia Class.

294.   As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Ga. Code Ann. § 10-1-390, *et seq.*, the Georgia Plaintiff and Members of the Georgia Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their personal information and the loss of the ability to control the use of their personal information, which allowed Defendants to profit at the expense of the Georgia

1    Plaintiff and Members of the Georgia Class.

2    295.   As outlined herein, there is tangible value in the Georgia Plaintiff's and

3    Members of the Georgia Class's personal information. The Georgia Plaintiff and

4    Members of the Georgia Class have lost the opportunity to receive value in exchange

5    for their personal information.

6    296.   Defendants' monetization of the Georgia Plaintiff's and Members of the

7    Georgia Class's personal information demonstrates that there is a market for their

8    personal information.

9    297.   The Georgia Plaintiff's and Members of the Georgia Class's personal

10   information is now in the possession of Defendants, who have used and will use it for

11   their financial gain.

12   298.   Defendants' retention of the Georgia Plaintiff's and Members of the

13   Georgia class's personal information presents a continuing risk to them as well as the

14   general public. The Georgia Plaintiff and Members of the Georgia Class seek relief for

15   the injuries they have suffered as a result of Defendants' unfair and unlawful acts and

16   practices, as provided by Ga. Code Ann. § 10-1-390, *et seq*., and applicable law,

17   including all actual damages and attorneys' fees and costs, treble damages, statutory

18   damages, and restitution, as well as an injunction requiring Defendants to each

19   permanently delete, destroy or otherwise sequester the personal information collected

20   without parental consent, requiring Defendants to provide a complete audit and

21   accounting of the uses of the personal information by them and any other third parties,

22   and other appropriate injunctive and/or declaratory relief.

**COUNT V**
**NEGLIGENCE**
**(Against all Defendants by Plaintiff A.K.,**
**by and through their Parent, on Behalf**
**of Themselves and the Georgia Class)**

27   299.   The Georgia Plaintiff and Members of the Georgia re-allege Paragraphs 1-

28   200 as if fully set forth herein.

300.   At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Georgia Plaintiff's and Georgia Class Members' use of TikTok.

301.   Defendants owed Georgia Plaintiff and Georgia Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

302.   Defendants also owed Georgia Plaintiff and Georgia Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

303.   Georgia Plaintiff and Georgia Class Members are within the class of persons that COPPA was intended to protect.

304.   Defendants also owed a special relationship duty to Georgia Plaintiff and Georgia Class Members to protect them against harm caused by TikTok. Georgia Plaintiff and Georgia Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe environment on TikTok, and Defendants have the superior ability and control over TikTok to provide that safety on its app. The special relationship Georgia Plaintiff and Georgia Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the increase in users and user activity generated by children.

305.   Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

306.   Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

307.   Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Georgia Plaintiff and Georgia Members by Defendants'

1   want of ordinary care and/or skill in the management of their property.

2       308.   Georgia Plaintiff and Georgia Class Members were foreseeable users of
3   TikTok.

4       309.   Defendants operate a website or online service directed at children under
5   the age of 13, as defined by COPPA.

6       310.   Defendants had actual knowledge that children under the age of 13, such as
7   Georgia Plaintiff and Georgia Class Members, were using and would use Full Access
8   Platform.

9       311.   Defendants invited, solicited, and encouraged the fact, extent, and manner
10  of Georgia Plaintiff's and Georgia Class Members' use of TikTok.

11      312.   Defendants had actual knowledge that the use of TikTok (as developed, set
12  up, managed, maintained, supervised, and operated by Defendants) would result in
13  Defendants collecting and using Georgia Plaintiff's and Georgia Class Members'
14  personal information.

15      313.   At all relevant times, Defendants had actual knowledge that TikTok (as
16  developed, setup, managed, maintained, supervised, and operated by that Defendant)
17  posed unreasonable risks of harm to youth such as Georgia Plaintiff and Georgia Class
18  Members through the collection, use, and/or disclosure of their personal information.
19  Those risks were known and knowable, including in light of the multiple previous
20  violations of minor children's privacy on TikTok in the last decade.

21      314.   Defendants had actual knowledge that their under-13 users would attempt
22  to create regular accounts instead of only trying to create Kids Mode accounts.

23      315.   Defendants had actual knowledge that when under-13 users created regular
24  accounts instead of Kids Mode accounts, their personal information would be treated
25  without the adequate protections warranted for personal information of under-13 users
26  online.

27      316.   Defendants had actual knowledge that its "age gate" features were not
28  reasonably adequate to protect the privacy of children's information on TikTok.

317.  Defendants had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

318.  Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Georgia Plaintiff and Georgia Class Members by violating their privacy.

319.  Defendants could have avoided Georgia Plaintiff's and Georgia Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

320.  Imposing a duty on Defendants would benefit the community at large.

321.  Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Georgia Plaintiff and Georgia Class Members.

322.  Defendants owed a heightened duty of care to youth users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to youth users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

323.  Defendants breached their duty of care that they owed Georgia Plaintiff and Georgia Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

a.  Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity

of users or by adopting ineffective age and identity verification protocols,

b.    Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

c.    Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

d.    Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old

324. Defendants have breached their duty of care that they owed to Georgia Plaintiff and Georgia Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

a.    Failing to implement effective protocols to block users under the age of 13,

b.    Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

c.    Failing to implement effective parental controls.

325. These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

326. Defendants' violation of COPPA constitutes negligence per se.

327.   A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like the Georgia Plaintiff.

328.   At all relevant times, Georgia Plaintiff and Georgia Class Members used TikTok in the manner it was intended to be used.

329.   As a direct and proximate result of Defendants' breach of one or more of its duties, Georgia Plaintiff and Georgia Class Members were harmed by Defendants' violation of Georgia Plaintiff's and Georgia Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

330.   The harm to the Georgia Plaintiff and Georgia Class Members is the type of harm that COPPA was intended to prevent.

331.   The Georgia Plaintiff and Georgia Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

332.   Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Georgia Plaintiff and Georgia Class Members.

333.   But for Defendants' violation of the applicable laws and regulations related to COPPA, Georgia Plaintiff's and Georgia Class Members' personal information would not have been used, collected, or disclosed to third parties.

334.   As a direct and proximate result of Defendants' negligence per se, Georgia Plaintiff and Georgia Class Members have been injured and are entitled to damages in an amount to be proven at trial.

335.   Georgia Plaintiff demands judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

//

**C.    ILLINOIS CLAIMS**

**COUNT VI**
**ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**(Against all Defendants by Plaintiff T.W.**
**by and through their Parent, on Behalf**
**of Themselves and the Illinois Class)**

336.    Plaintiff T.W., by and through their parent, Rachel Smith ("Illinois Plaintiff") and Members of the Illinois Class re-allege Paragraphs 1-200 as if fully set forth herein.

337.    Under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged hereby." 815 ILCS 505/2.

338.    Any person who has suffered damages by virtue of violations of the ICFA may bring a claim pursuant to 815 ILCS 505/10a.

339.    Through their conduct as alleged above, Defendants have engaged in unlawful, deceptive, and unfair acts in the conduct of trade or commerce, as prohibited by 815 ILCS 505/2.

340.    Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of the Illinois Plaintiff and Illinois Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these

1  practices caused to the Illinois Plaintiff and Illinois Class Members outweigh their

2  utility, if any.

3    341.  As outlined herein, TikTok represented that TikTok Kids Mode was

4  designed for children under 13 years old by representing to children who identified

5  themselves as being under 13 years old that the child is "about to access a TikTok

6  experience designed just for you." In Kids Mode, a user can view videos, but cannot

7  upload videos, post information publicly, or message other users.

8    342.  TikTok Kids Mode is not designed to be legally appropriate for children

9  under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights

10  of children under 13 years old, including by collecting and using their personal

11  information without providing direct notice to their parents or obtaining parental

12  consent.

13    343.  Defendants each engaged in consumer-oriented acts through the offer,

14  promotion, and/or distribution of the TikTok app, which significantly impacted the

15  public because TikTok is used nationwide, including in Illinois, and there are millions

16  of users, including the Illinois Plaintiff and Members of the Illinois Class.

17    344.  Defendants at all relevant times knowingly violated legal duties and public

18  policy by unfairly and unlawfully collecting the personal information of children under

19  13 years old and tracking, profiling, and targeting those children with behavioral

20  advertising for Defendants' commercial financial gain.

21    345.  As outlined herein, Defendants at all times had actual knowledge of their

22  own non-compliance with COPPA and other applicable privacy-related laws. Further,

23  Defendants at all times had actual knowledge of their collection of the personal

24  information of the Illinois Plaintiff and the Illinois Class Members and the tracking,

25  profiling, and targeting of those children for lucrative behavioral advertising.

26    346.  As outlined herein, Defendants intentionally designed TikTok to, among

27  other things, attract children under 13 by making child-directed content available to them

28  so that TikTok could collect the personal information for substantial commercial gain.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

347.    TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

348.    In particular, Defendants systematically collected and/or used personal information from children under 13 years old in violation of COPPA, and therefore the FTC Act, by:

a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c.    Failing to obtain verifiable parental consent before any collection or use of personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.   Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

349.   Under 15 U.S.C. § 6502(c), violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair . . . act or practice prescribed under 15 U.S.C. § 57(a)(1)(B)." The COPPA and FTC rules define unfair acts or practices in or affecting commerce within the meaning of the FTC Act, 15 U.S.C. § 45(a)(1), which is the model for numerous state consumer protection statutes, including the ICFA.[51]

350.   In addition, ICFA states that "[i]n construing this section consideration shall be given to the interpretations of the Federal Trade Commission, and the federal courts relating to section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2.

351.   Given that the ICFA defers to conduct proscribed by the FTC Act, Defendants violated the ICFA by engaging in unfair and unlawful acts as prohibited by 15 U.S.C. § 45(a)(1).

352.   The actions committed by Defendants were unfair, immoral, oppressive, unethical and unscrupulous. Defendants' conduct was substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. The Illinois Plaintiff and Members of the Illinois Class were unable to avoid injury because Defendants deliberately took advantage of their consumers' – in this case, children under the age of 13 – lack of knowledge, experience, ability, and/or capacity.

353.   Defendants knew or recklessly disregarded their violations of the ICFA by willfully committing the unlawful and unfair acts outlined throughout this complaint.

354.   Defendants' actions were a substantial factor causing harm, injury in fact, and actual damages to the Illinois Plaintiff and Members of the Illinois Class.

355.   The Illinois Plaintiff has standing to bring their claims under the ICFA. The

---

[51] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the internet.").

Illinois Plaintiff and Members of the Illinois Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, "benefit-of-the-bargain" damages, the loss of the value and/or diminishment in value of their personal information, and the loss of the ability to control the use of their personal information.

356.   The Illinois Plaintiff and Members of the Illinois Class suffered "benefit-of-the-bargain" injuries and damages as a direct and proximate result of Defendants' unfair and unlawful business practices. The Illinois Plaintiff and Members of the Illinois Class did not receive the full benefit of the bargain, and instead received services from TikTok that were less valuable than the services they would have received if TikTok had abided by COPPA.

357.   The Illinois Plaintiff and Members of the Illinois Class, therefore, were damaged in an amount at least equal to the difference in value of the TikTok service that the Illinois Plaintiff and Members of the Illinois Class received (for example. where TikTok collected and used children's personal information without notifying their parents or gaining their parents' consent) and the value of the TikTok service that Illinois Plaintiff's and Illinois Class Members would have received if TikTok had abided by COPPA (and, for example, not collected and used children's personal information without notifying their parents or gaining their parents' consent).

358.   As a direct and proximate result of TikTok's unlawful and unfair business acts and practices, Illinois Plaintiff and Illinois Class Members also suffered "right to exclude" injuries and damages.

359.   The Illinois Plaintiff and Members of the Illinois Class have a property interest in the personal information collected by TikTok. Illinois Plaintiff and Class Members suffered an economic injury because they were deprived of their right to exclude TikTok from their personal information.

360.   The Illinois Plaintiff's and Members of the Illinois Class's damages may also be measured by the amount of monetary compensation that TikTok would have to

provide to parents to gain their consent to collect and use their children's personal information.

361.   The Illinois Plaintiff and Members of the Illinois Class also suffered damages because the Defendants' unfair and unlawful acts and practices diminished the value of their personal information.

362.   As outlined herein, there is tangible value in the Illinois Plaintiff's and Members of the Illinois Class's personal information. The Illinois Plaintiff and Members of the Illinois Class have lost the opportunity to receive value in exchange for their personal information.

363.   Defendants' monetization of the Illinois Plaintiff's and Members of the Illinois Class's personal information demonstrates that there is a market for their personal information.

364.   The Illinois Plaintiff's and Members of the Illinois Class's personal information is now in the possession of Defendants, who have used and will use it for their financial gain.

365.   Pursuant to 815 ILCS 505/10 *et seq*., Illinois Plaintiff seek equitable relief to enjoin TikTok from continuing its unlawful and unfair practices and any other equitable relief necessary to secure the interest of themselves and Illinois Class Members. Additionally, Illinois Plaintiff requests that the Court restore to Plaintiff and the Class, in the form of restitution, all money TikTok may have acquired as a result of its unlawful and unfair business practices.

366.   Defendants' retention of the Illinois Plaintiff's and Members of the Illinois Class's personal information presents a continuing risk to them as well as the general public. The Illinois Plaintiff and Members of the Illinois Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by 815 ILCS 505, *et seq*., and applicable law, including restitution and attorneys' fees, as well as an injunction requiring Defendants to permanently delete, destroy or otherwise sequester the personal information collected without parental

consent, requiring Defendants to provide a complete audit and accounting of the uses of the personal information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

367.   Illinois Plaintiff and Illinois Class Members lack an adequate remedy at law. It is unclear whether an award of damages can or will adequately remedy the Illinois Plaintiff's and Illinois Class Members' monetary losses. The restitution that Illinois Plaintiff and Illinois Class Members seek under the ICFA is not the same remedy as disgorgement for unjust enrichment. Furthermore, restitution under the ICFA is more prompt, efficient, and certain than the monetary damages that Plaintiffs seek.

368.   Illinois Plaintiff and Illinois Class Members also lack an adequate remedy at law because TikTok's refusal to abide by the 2019 Permanent Injunction is a future harm. Namely, TikTok continues to profit from its unlawful business practices at the expense of the privacy of children, and TikTok has failed to implement adequate age gates, to identify and remove underage users of non-Kids Mode accounts, to delete data, even upon parental request, has taken steps to make deletion requests onerous, and has continued to collect data from purportedly deleted accounts.

## COUNT VII
## NEGLIGENCE
### (Against all Defendants by Plaintiff T.W., by and through their Parent, on Behalf of Themselves and the Illinois Class)

369.   The Illinois Plaintiff and Illinois Class Members re-allege Paragraphs 1-200 as if fully set forth herein.

370.   At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Illinois Plaintiff's and Illinois Class Members' use of TikTok.

371.   Defendants owed Illinois Plaintiff and Illinois Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

372.   Defendants also owed Illinois Plaintiff and Illinois Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

373.   Illinois Plaintiff and Illinois Class Members are within the class of persons that COPPA was intended to protect.

374.   Defendants also owed a special relationship duty to Illinois Plaintiff and Illinois Class Members to protect them against harm caused by TikTok. Illinois Plaintiff and Illinois Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe and age-appropriate environment on TikTok, and Defendants have the superior ability and control over TikTok to provide both safety and an age-appropriate environment on its app. The special relationship Illinois Plaintiff and Illinois Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity.

375.   Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

376.   Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

377.   Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Illinois Plaintiff and Illinois Class Members by Defendants' want of ordinary care and/or skill in the management of their property.

378.   Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

379.   Defendants had actual knowledge that children under 13, such as Illinois Plaintiff and Illinois Class Members, were using and would use the Full Access Platform.

380.   Defendants invited, solicited, and encouraged the fact, extent, and manner

of Illinois Plaintiff's and Illinois Class Members' use of TikTok.

381.   Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using Illinois Plaintiff's and Illinois Class Members' personal information.

382.   At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Illinois Plaintiff and Illinois Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

383.   Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

384.   Defendants had actual knowledge that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

385.   Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

386.   Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Illinois Plaintiff and Illinois Class Members by violating their privacy.

387.   Defendants could have avoided Illinois Plaintiff's and Illinois Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

388.   Imposing a duty on Defendants would benefit the community at large.

389.   Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Illinois

Plaintiff and Illinois Class Members.

390.   Defendants owed a heightened duty of care to under 13 users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to under 13 users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

391.   Defendants breached their duty of care that they owed Illinois Plaintiff and Illinois Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

    a.   Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not adequately verify the age or identity of users or by adopting ineffective age and identity verification protocols,

    b.   Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

    c.   Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

    d.   Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under

1    13 years old.

2    392.   Defendants have breached their duty of care that they owed to Illinois

3    Plaintiff and Illinois Class Members through their non-feasance, failure to act, and

4    omissions in the development, setup, management, maintenance, operation, supervision,

5    and control of TikTok. These breaches are based on the Defendants' actions in managing

6    their property—TikTok—that they made available to the public, independent of any

7    actions taken by a third party. Those breaches include:

8            a.    Failing to implement effective protocols to block users under the age

9                  of 13,

10           b.    Failing to implement effective protocols to prevent the collecting,

11                 sharing, and selling of the personal information of users under the

12                 age of 13 without prior affirmative authorization, and

13           c.    Failing to implement effective parental controls.

14   393.   These breaches also violate COPPA since Defendants collect, use, and

15   disclose under-13 users' personal information without notifying parents and obtaining

16   verifiable parental consent.

17   394.   Defendants' violation of COPPA constitutes negligence per se.

18   395.   A reasonable company under the same or similar circumstances as

19   Defendants would have developed, set up, managed, maintained, supervised, and

20   operated its platforms in a manner that is safer for and more protective of youth users

21   like Illinois Plaintiff and Illinois Class Members.

22   396.   At all relevant times, Illinois Plaintiff and Illinois Class Members used

23   TikTok in the manner it was intended to be used.

24   397.   As a direct and proximate result of Defendants' breach of one or more of

25   its duties, Illinois Plaintiff and Illinois Class Members were harmed by Defendants'

26   violation of Illinois Plaintiff's and Illinois Class Members' privacy and the loss of

27   control over when, how, and for what purpose their personal information is collected,

28   used, and disclosed.

398.   The harm to the Illinois Plaintiff and Illinois Class Members is the type of harm that COPPA was intended to prevent.

399.   The Illinois Plaintiff and Illinois Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

400.   Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Illinois Plaintiff and Illinois Class Members.

401.   But for Defendants' violation of the applicable laws and regulations related to COPPA, Illinois Plaintiff and Illinois Class Members' personal information would not have been used, collected, or disclosed to third parties.

402.   As a direct and proximate result of Defendants' negligence per se, Illinois Plaintiff and Illinois Class Members have been injured and are entitled to damages in an amount to be proven at trial.

403.   Illinois Plaintiff and Illinois Class Members demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### D.    LOUISIANA CLAIMS

**COUNT VIII**
**LOUISIANA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION ACT,**
**LA. STAT. ANN. § 51:1401, *et seq.***
**(Against all Defendants by Plaintiff C.H., by**
**and through their Parent, on Behalf of**
**Themselves and the Louisiana Class)**

404.   Plaintiff C.H., minor, by and through their parent, Arthur Henry ("Louisiana Plaintiff"), on behalf of themselves and Members of the Louisiana Class re-allege Paragraphs 1-200 as if fully set forth herein.

405.   The Louisiana Unfair Trade Practices and Consumer Protection Act (LUTPA) prohibits "[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce…" La. Stat. Ann. § 51:1405.

406.    Any person who has been harmed by practices banned under LUTPA may bring a claim pursuant to La. Stat. Ann. § 51:1409.

407.    The Louisiana Plaintiff, Louisiana Class Members, and Defendants are each a "person" as defined by La. Stat. Ann. § 51:1402.

408.    Through their conduct as alleged above, Defendants have engaged in deceptive, unlawful, and unfair acts in connection with the conduct of trade or commerce, as prohibited by La. Stat. Ann. § 51:1405, within the State of Louisiana.

409.    Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of the Illinois Plaintiff and Illinois Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to the Illinois Plaintiff and Illinois Class Members outweigh their utility, if any.

410.    As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years old that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

411.    TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

412.    Defendants each engaged in consumer-oriented acts through the offer,

promotion, and/or distribution of the TikTok app, which significantly impacted the public because TikTok is used nationwide, including in Illinois, and there are millions of users, including the Illinois Plaintiff and Members of the Illinois Class.

413.   Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of children under 13 years old and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

414.   As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their collection of the personal information of the Illinois Plaintiff and the Illinois Class Members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

415.   As outlined herein, Defendants intentionally designed TikTok to, among other things, attract children under 13 by making child-directed content available to them so that TikTok could collect the personal information for substantial commercial gain

416.   TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

417.   In particular, Defendants systematically collected and/or used personal information from children under 13 years old in violation of COPPA, and therefore the FTC Act, by:

a.   Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b.   Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c.   Failing to obtain verifiable parental consent before any collection or use of personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.   Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

418.   Under 15 U.S.C. § 6502(c), violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair…act or practice prescribed under 15 U.S.C. § 57(a)(1)(B)." The COPPA and FTC rules define unfair acts or practices in or affecting commerce within the meaning of the FTC Act, 15 U.S.C. § 45(a)(1), which is the model for numerous state consumer protection statutes, including LUTPA.[52]

419.   Louisiana courts have noted that "LUTPA was modeled after the Federal Trade Commission Act, and the two acts share the same goals: to protect consumers and

---

[52] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the internet.").

1    to foster competition." *Guillory v. Broussard*, 194 So.3d 764, 779 (La. Ct. App. May

2    2016).

3        420.    Given that LUTPA is modeled after and proscribes the same conduct as

4    prohibited by the FTC Act, Defendants violated LUTPA by engaging in unfair and

5    illegal acts as outlawed by 15 U.S.C. § 45(a)(1).

6        421.    The actions committed by Defendants were unfair, immoral, oppressive,

7    unethical and unscrupulous. Defendants' conduct was substantially injurious to

8    consumers, and there are no greater countervailing benefits to consumers or competition.

9    The Louisiana Plaintiff and Members of the Louisiana Class were unable to avoid injury

10   because Defendants deliberately took advantage of their consumers' – in this case,

11   children under the age of 13 – lack of knowledge, experience, ability, and/or capacity.

12       422.    Defendants knew or recklessly disregarded their violations of LUTPA by

13   willfully committing the unlawful and unfair acts outlined throughout this complaint.

14       423.    Defendants' actions were a substantial factor causing harm, injury in fact,

15   and actual damages to the Louisiana Plaintiff and Members of the Louisiana Class.

16       424.    Louisiana Plaintiff and Members of the Louisiana Class have standing to

17   bring their claims under LUTPA. The Louisiana Plaintiff and Members of the Louisiana

18   Class have suffered and will continue to suffer an ascertainable loss of money or

19   property, real or personal, and monetary and non-monetary damages, as described

20   herein, including, inter alia, "benefit-of-the-bargain" damages, the loss of the value

21   and/or diminishment in value of their personal information, and the loss of the ability to

22   control the use of their personal information.

23       425.    Louisiana Plaintiff and Members of the Louisiana Class suffered "benefit-

24   of-the-bargain" injuries and damages as a direct and proximate result of Defendants'

25   unfair and unlawful business practices. The Louisiana Plaintiff and Members of the

26   Louisiana Class did not receive the full benefit of the bargain, and instead received

27   services from TikTok that were less valuable than the services they would have received

28   if TikTok had abided by COPPA.

426.   The Louisiana Plaintiff and Members of the Louisiana Class, therefore, were damaged in an amount at least equal to the difference in value of the TikTok service that the Louisiana Plaintiff and Members of the Louisiana Class received (for example, where TikTok collected and used children's personal information without notifying their parents or gaining their parents' consent) and the value of the TikTok service that Louisiana Plaintiff and Louisiana Class Members would have received if TikTok had abided by COPPA (and, for example, not collected and used children's personal information without notifying their parents or gaining their parents' consent).

427.   As a direct and proximate result of TikTok's unlawful and unfair business acts and practices, Louisiana Plaintiff and Louisiana Class Members also suffered "right to exclude" injuries and damages.

428.   The Louisiana Plaintiff and Members of the Louisiana Class have a property interest in the personal information collected by TikTok. Louisiana Plaintiff and Class Members suffered an economic injury because they were deprived of their right to exclude TikTok from their personal information.

429.   The Louisiana Plaintiff and Members of the Louisiana Class's damages may also be measured by the amount of monetary compensation that TikTok would have to provide to parents to gain their consent to collect and use their children's personal information.

430.   The Louisiana Plaintiff and Members of the Louisiana Class also suffered damages because the Defendants' unfair and unlawful acts and practices diminished the value of their personal information.

431.   As outlined herein, there is tangible value in the Louisiana Plaintiff's and Members of the Louisiana Class's personal information. The Louisiana Plaintiff and Members of the Louisiana class have lost the opportunity to receive value in exchange for their personal information.

432.   Defendants' monetization of the Louisiana Plaintiff's and Members of the Louisiana Class's personal information demonstrates that there is a market for their

personal information.

433.   The Louisiana Plaintiff's and Members of the Louisiana Class's personal information is now in the possession of Defendants, who have used and will use it for their financial gain.

434.   Pursuant to La. Ann. Stat. § 55:1409, Louisiana Plaintiff requests that the Court restore to Plaintiff and the Class, in the form of restitution, all money TikTok may have acquired as a result of its unlawful and unfair business practices.

435.   Defendants' retention of the Louisiana Plaintiff's and Members of the Louisiana Class's personal information presents a continuing risk to them as well as the general public. Louisiana Plaintiff and Members of the Louisiana Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by La. Ann. Stat. § 51:1400, *et seq.* and applicable law, including restitution and attorneys' fees.

436.   Louisiana Plaintiff and Louisiana Class Members lack an adequate remedy at law. It is unclear whether an award of damages can or will adequately remedy the Louisiana Plaintiff's monetary losses. The restitution that Louisiana Plaintiff and Louisiana Class Members seek under LUTPA is not the same remedy as disgorgement for unjust enrichment. Furthermore, restitution under LUTPA is more prompt, efficient, and certain than the monetary damages that Plaintiffs seek.

437.   Louisiana Plaintiff and Louisiana Class Members also lack an adequate remedy at law because TikTok's refusal to abide by the 2019 Permanent Injunction is a future harm. Namely, TikTok continues to profit from its unlawful business practices at the expense of the privacy of children, and TikTok has failed to implement adequate age gates, to identify and remove underage users of non-Kids Mode accounts, to delete data, even upon parental request, has taken steps to make deletion requests onerous, and has continued to collect data from purportedly deleted accounts.

//

//

**COUNT IX**
**NEGLIGENCE**
**(Against all Defendants by Plaintiff C.H.,**
**by and through their Parent, on Behalf**
**of Themselves and the Louisiana Class)**

438.   The Louisiana Plaintiff and Louisiana Class Members re-allege Paragraphs 1-200 as if fully set forth herein.

439.   At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Louisiana Plaintiff's and Louisiana Class Members' use of TikTok.

440.   Defendants owed the Louisiana Plaintiff and Louisiana Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

441.   Defendants also owed Louisiana Plaintiff and Louisiana Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

442.   Louisiana Plaintiff and Louisiana Class Members are within the class of persons that COPPA was intended to protect.

443.   Defendants also owed a special relationship duty to Louisiana Plaintiff and Louisiana Class Members to protect them against harm caused by TikTok. Louisiana Plaintiff and Louisiana Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe and age-appropriate environment on TikTok, and Defendants have the superior ability and control over TikTok to provide both safety and an age-appropriate environment on its app. The special relationship Louisiana Plaintiff and Louisiana Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity.

444.   Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise

reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

445.　Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

446.　Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Louisiana Plaintiff and Louisiana Members by Defendants' want of ordinary care and/or skill in the management of their property.

447.　Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

448.　Defendants had actual knowledge that children under 13, such as Louisiana Plaintiff and Louisiana Class Members, were using and would use the Full Access Platform.

449.　Defendants invited, solicited, and encouraged the fact, extent, and manner of Louisiana Plaintiff's and Louisiana Class Members' use of TikTok.

450.　Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using Louisiana Plaintiff's and Louisiana Class Members' personal information.

451.　At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Louisiana Plaintiff and Louisiana Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

452.　Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

453.　Defendants had actual knowledge that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated

without the adequate protections warranted for personal information of under-13 users online.

454.    Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

455.    Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Louisiana Plaintiff and Louisiana Class Members by violating their privacy.

456.    Defendants could have avoided Louisiana Plaintiff's and Louisiana Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

457.    Imposing a duty on Defendants would benefit the community at large.

458.    Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Louisiana Plaintiff and Louisiana Class Members.

459.    Defendants owed a heightened duty of care to under 13 users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to under 13 users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

460.    Defendants breached their duty of care that they owed Louisiana Plaintiff and Louisiana Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

a.   Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not adequately verify the age or identity of users or by adopting ineffective age and identity verification protocols,

b.   Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

c.   Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

d.   Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

461.   Defendants have breached their duty of care that they owed to Louisiana Plaintiff and Louisiana Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

a.   Failing to implement effective protocols to block users under the age of 13,

b.   Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

c.   Failing to implement effective parental controls.

462.   These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining

verifiable parental consent.

463.   Defendants' violation of COPPA constitutes negligence per se.

464.   A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like the Louisiana Plaintiff.

465.   At all relevant times, Louisiana Plaintiff and Louisiana Class Members used TikTok in the manner it was intended to be used.

466.   As a direct and proximate result of Defendants' breach of one or more of its duties, Louisiana Plaintiff and Louisiana Class Members were harmed by Defendants' violation of Louisiana Plaintiff's and Louisiana Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

467.   The harm to the Louisiana Plaintiff and Louisiana Class Members is the type of harm that COPPA was intended to prevent.

468.   The Louisiana Plaintiff and Louisiana Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

469.   Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Louisiana Plaintiff and Louisiana Class Members.

470.   But for Defendants' violation of the applicable laws and regulations related to COPPA, Louisiana Plaintiff's and Louisiana Class Members' personal information would not have been used, collected, or disclosed to third parties.

471.   As a direct and proximate result of Defendants' negligence per se, Louisiana Plaintiff and Louisiana Class Members have been injured and are entitled to damages in an amount to be proven at trial.

472.   Louisiana Plaintiff and Louisiana Class Members demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages,

together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT X**
**UNJUST ENRICHMENT**
**(Against all Defendants by Plaintiff C.H.,**
**by and through their Parent, on Behalf**
**of Themselves and the Louisiana Class)**

473.   The Louisiana Plaintiff and Louisiana Class Members re-allege Paragraphs 1-200 as if fully set forth herein.

474.   Defendants have realized millions of dollars in revenue through their unfair, unlawful and deceptive conduct alleged herein. Defendants have substantially profited from their collection and use of the Louisiana Plaintiff's and Class Members' Personal Information through targeted behavioral advertising and commercialization of their Personal Information.

475.   Defendants unfairly received monetary benefits from the Louisiana Plaintiff and Louisiana Class Members. It would be inequitable and unjust to permit Defendants to retain the economic benefits they have obtained through advertising and commercialization derived from the Personal Information of Louisiana Plaintiff and Louisiana Class Members.

476.   Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by Louisiana Plaintiff and all Class Members, through their unlawful, unfair, unauthorized, and impermissible use of the Personal Information of the Louisiana Plaintiff and Louisiana Class Members, and allowing Defendants to retain the profits from their unlawful, unauthorized, and impermissible use of the Louisiana Plaintiff's and Louisiana Class Members' Personal Information would be unjust and contrary to public policy.

477.   Louisiana Plaintiff and Louisiana Class Members are therefore entitled to recover the amounts realized by Defendants at the expense of Louisiana Plaintiff and Louisiana Class Members.

**E.    NORTH CAROLINA CLAIMS**

**COUNT XI**
**NORTH CAROLINA UNFAIR TRADE PRACTICES ACT,**
**N.C. GEN. STAT. ANN. § 75-1.1**
**(Against all Defendants by Plaintiff D.P.,**
**by and through their Parent, on behalf**
**of Themselves and the North Carolina Class)**

478.   Plaintiff D.P., minor, by and through their parent, Tammy Padgett ("North Carolina Plaintiff,"), on behalf of themselves and Members of the North Carolina Class, re-allege Paragraphs 1-200 as if fully set forth herein.

479.   The North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. Ann. § 75-1.1, states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

480.   Any person who has been harmed by practices banned under N.C. Gen. Stat. Ann. § 75-1.1 may bring a claim pursuant to N.C. Gen. Stat. Ann. § 75-16.

481.   The North Carolina Plaintiff, North Carolina Class Members, and Defendants are each a "person" under N.C. Gen. Stat. Ann. § 75-16.

482.    Through their conduct as alleged above, Defendants have engaged in deceptive, unlawful, and unfair acts in connection with the sale of merchandise, as prohibited by UDTPA, within the state of North Carolina.

483.   Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of the North Carolina Plaintiff and North Carolina Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to the North Carolina Plaintiff and North

Carolina Class Members outweigh their utility, if any.

484.  As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years old that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

485.  TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

486.  Defendants each engaged in consumer-oriented acts through the offer, promotion, and/or distribution of the TikTok app, which significantly impacted the public because TikTok is used nationwide, including in North Carolina, and there are millions of users, including the North Carolina Plaintiff and Members of the North Carolina Class.

487.  Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of children under 13 years old and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

488.  As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their collection of the personal information of the North Carolina Plaintiff and the North Carolina Class Members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

489.  As outlined herein, Defendants intentionally designed TikTok to, among other things, attract children under 13 by making child-directed content available to them

so that TikTok could collect the personal information for substantial commercial gain.

490.   TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

491.   In particular, Defendants systematically collected and/or used personal information from children under 13 years old in violation of COPPA, and therefore the FTC Act, by:

a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c.    Failing to obtain verifiable parental consent before any collection or use of personal information from children under 13 years old, in

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.    Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

492.   UDTPA is modeled after the FTC Act and the North Carolina Supreme Court has noted that the "similarity in language" between the two statutes is "not accidental." *State ex rel. Edmisten v. J.C. Penny Co., Inc.*, 233 S.E.2d 895, 898 (N.C. Sup. Ct. 1977). Consequently, "the federal decisions construing the FTC Act, may furnish some guidance to the meaning of [UDTPA]." *Id.*

493.   Under 15 U.S.C. § 6502(c), violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair…act or practice prescribed under 15 U.S.C. § 57a(1)(B)." The COPPA and FTC rules define unfair acts or practices in or affecting commerce within the meaning of the FTC Act, 15 U.S.C. § 45(a)(1), which is the model for numerous state consumer protection statutes, including UDTPA.[53]

494.   Given that UDTPA is modeled after and proscribes the same conduct as prohibited by the FTC Act, Defendants violated UDTPA by engaging in unfair and illegal acts as outlawed by 15 U.S.C. § 45(a)(1).

495.   The actions committed by Defendants were unfair, immoral, oppressive, unethical and unscrupulous. Defendants' conduct was substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. The North Carolina Plaintiff and Members of the North Carolina Class were unable to avoid injury because Defendants deliberately took advantage of their consumers' – in this case, children under the age of 13 – lack of knowledge, experience, ability, and/or capacity.

496.   Defendants knew or recklessly disregarded their violations of UDTPA by

---

[53] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the internet.").

1  willfully committing the unlawful and unfair acts outlined throughout this complaint.

2  497.   Defendants' actions were a substantial factor causing harm, injury in fact,

3  and actual damages to the North Carolina Plaintiff and Members of the North Carolina

4  Class.

5  498.   North Carolina Plaintiff and Members of the North Carolina Class have

6  standing to bring their claims under UDTPA. The North Carolina Plaintiff and Members

7  of the North Carolina Class have suffered and will continue to suffer an ascertainable

8  loss of money or property, real or personal, and monetary and non-monetary damages,

9  as described herein, including, inter alia, "benefit-of-the-bargain" damages, the loss of

10  the value and/or diminishment in value of their personal information, and the loss of the

11  ability to control the use of their personal information.

12  499.   North Carolina Plaintiff and Members of the North Carolina Class suffered

13  "benefit-of-the-bargain" injuries and damages as a direct and proximate result of

14  Defendants' unfair and unlawful business practices. The North Carolina Plaintiff and

15  Members of the North Carolina Class did not receive the full benefit of the bargain, and

16  instead received services from TikTok that were less valuable than the services they

17  would have received if TikTok had abided by COPPA.

18  500.   The North Carolina Plaintiff and Members of the North Carolina Class,

19  therefore, were damaged in an amount at least equal to the difference in value of the

20  TikTok service that the North Carolina Plaintiff and Members of the North Carolina

21  Class received (for example. where TikTok collected and used children's personal

22  information without notifying their parents or gaining their parents' consent) and the

23  value of the TikTok service that North Carolina Plaintiff and North Carolina Class

24  Members would have received if TikTok had abided by COPPA (and, for example, not

25  collected and used children's personal information without notifying their parents or

26  gaining their parents' consent).

27  501.   The North Carolina Plaintiff and Members of the North Carolina Class have

28  a property interest in the personal information collected by TikTok. North Carolina

Plaintiff and Class Members suffered an economic injury because they were deprived of their right to exclude TikTok from their personal information.

502.   The North Carolina Plaintiff's and Members of the North Carolina Class's damages may also be measured by the amount of monetary compensation that TikTok would have to provide to parents to gain their consent to collect and use their children's personal information.

503.   The North Carolina Plaintiff and Members of the North Carolina Class also suffered damages because the Defendants' unfair and unlawful acts and practices diminished the value of their personal information.

504.   As outlined herein, there is tangible value in the North Carolina Plaintiff's and Members of the North Carolina Class's personal information. The North Carolina Plaintiff and Members of the North Carolina class have lost the opportunity to receive value in exchange for their personal information.

505.   Defendants' monetization of the North Carolina Plaintiff's and Members of the North Carolina Class's personal information demonstrates that there is a market for their personal information.

506.   The North Carolina Plaintiff's and Members of the North Carolina Class's personal information is now in the possession of Defendants, who have used and will use it for their financial gain.

507.   Pursuant to N.C. Gen. Stat. Ann. § 75-16, North Carolina Plaintiff requests that the Court restore to Plaintiff and the Class, in the form of restitution, all money TikTok may have acquired as a result of its unlawful and unfair business practices. North Carolina Plaintiff and North Carolina Class Members also seek equitable relief to enjoin TikTok from continuing its unlawful and unfair practices and any other equitable relief necessary to secure the interests of the Class Members.

508.   Defendants' retention of the North Carolina Plaintiff's and Members of the North Carolina Class's personal information presents a continuing risk to them as well as the general public. The North Carolina Plaintiff and Members of the North Carolina

Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by UDTPA and applicable law, including restitution and attorneys' fees, as well as an injunction requiring Defendants to permanently delete, destroy or otherwise sequester the personal information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the personal information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

509.    North Carolina Plaintiff and North Carolina Class Members lack an adequate remedy at law. It is unclear whether an award of damages can or will adequately remedy the North Carolina Plaintiff's monetary losses. The restitution that North Carolina Plaintiff and Class Members seek under UDTPA is not the same remedy as disgorgement for unjust enrichment. Furthermore, restitution under UDTPA is more prompt, efficient, and certain than the monetary damages that Plaintiffs seek.

510.    The North Carolina Plaintiff and Class Members also lack an adequate remedy at law because TikTok's refusal to abide by the 2019 Permanent Injunction is a future harm. Namely, TikTok continues to profit from its unlawful business practices at the expense of the privacy of children, and TikTok has failed to implement adequate age gates, to identify and remove underage users of non-Kids Mode accounts, to delete data, even upon parental request, has taken steps to make deletion requests onerous, and has continued to collect data from purportedly deleted accounts.

## COUNT XII
## NEGLIGENCE
### (Against all Defendants by Plaintiff D.P.,
### by and through their Parent, on Behalf of
### Themselves and the North Carolina Class)

511.    The North Carolina Plaintiff and Members of the North Carolina Class re-allege Paragraphs 1-200 as if fully set forth herein.

512.    At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from North Carolina Plaintiff's and

North Carolina Class Members' use of TikTok.

513.   Defendants owed the North Carolina Plaintiff and North Carolina Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

514.   Defendants also owed North Carolina Plaintiff and North Carolina Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

515.   North Carolina Plaintiff and North Carolina Class Members are within the class of persons that COPPA was intended to protect.

516.   Defendants also owed a special relationship duty to North Carolina Plaintiff and North Carolina Class Members to protect them against harm caused by TikTok. North Carolina Plaintiff and North Carolina Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe and age-appropriate environment on TikTok, and Defendants have the superior ability and control over TikTok to provide both safety and an age-appropriate environment on its app. The special relationship North Carolina Plaintiff and North Carolina Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity.

517.   Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

518.   Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

519.   Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to North Carolina Plaintiff and North Carolina Members by Defendants' want of ordinary care and/or skill in the management of their property.

520.   Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

521.   Defendants had actual knowledge that children under 13, such as North Carolina Plaintiff and North Carolina Class Members, were using and would use the Full Access Platform.

522.   Defendants invited, solicited, and encouraged the fact, extent, and manner of North Carolina Plaintiff's and North Carolina Class Members' use of TikTok.

523.   Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using North Carolina Plaintiff's and North Carolina Class Members' personal information.

524.   At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as North Carolina Plaintiff and North Carolina Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

525.   Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

526.   Defendants had actual knowledge that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

527.   Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

528.   Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured North Carolina Plaintiff and North Carolina Class Members by violating their privacy.

529. Defendants could have avoided North Carolina Plaintiff's and North Carolina Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

530. Imposing a duty on Defendants would benefit the community at large.

531. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to North Carolina Plaintiff and North Carolina Class Members.

532. Defendants owed a heightened duty of care to under 13 users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to under 13 users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

533. Defendants breached their duty of care that they owed North Carolina Plaintiff and North Carolina Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

    a.   Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not adequately verify the age or identity of users or by adopting ineffective age and identity verification protocols,

    b.   Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

obtained from parents,

c.    Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

d.    Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

534.   Defendants have breached their duty of care that they owed to North Carolina Plaintiff and North Carolina Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

a.    Failing to implement effective protocols to block users under the age of 13,

b.    Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

c.    Failing to implement effective parental controls.

535.   These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

536.   Defendants' violation of COPPA constitutes negligence per se.

537.   A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like the North Carolina Plaintiff.

538.   At all relevant times, North Carolina Plaintiff and North Carolina Class

Members used TikTok in the manner it was intended to be used.

539.   As a direct and proximate result of Defendants' breach of one or more of its duties, North Carolina Plaintiff and North Carolina Class Members were harmed by Defendants' violation of North Carolina Plaintiff's and North Carolina Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

540.   The harm to the North Carolina Plaintiff and North Carolina Class Members is the type of harm that COPPA was intended to prevent.

541.   The North Carolina Plaintiff and North Carolina Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

542.   Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to North Carolina Plaintiff and North Carolina Class Members.

543.   But for Defendants' violation of the applicable laws and regulations related to COPPA, North Carolina Plaintiff's and North Carolina Class Members' personal information would not have been used, collected, or disclosed to third parties.

544.   As a direct and proximate result of Defendants' negligence per se, North Carolina Plaintiff and North Carolina Class Members have been injured and are entitled to damages in an amount to be proven at trial.

545.   North Carolina Plaintiff and North Carolina Class Members demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

//

//

//

//

**F.  OHIO CLAIMS**

### COUNT XIII
### OHIO CONSUMER SALES PRACTICES ACT,
### OHIO. REV. CODE. § 1345, *et seq.*
#### (Against all Defendants by Plaintiffs P.B., J.S., and J.F., by and through their Parent, on behalf of Themselves and the Ohio Class)

546.    Plaintiff P.B., J.S., and J.F., minors, by and through their parent Brittany Santisi (the "Ohio Plaintiffs") on behalf of themselves and Ohio Class Members, re-allege Paragraphs 1-200 as if fully set forth herein.

547.    The Ohio Plaintiffs, the Ohio Class Members, and TikTok are "persons" within the meaning of Ohio Rev. Code § 1345.01(B), TikTok is a "Supplier" within the meaning of Ohio Rev. Code § 1345.01(C), and the Ohio Plaintiffs and Ohio Class Members are "Consumers" within the meaning of Ohio Rev. Code § 1345.01(D).

548.    TikTok engaged in "[c]onsumer transaction[s]" within the meaning of Ohio Rev. Code § 1345.01(A) by providing the Ohio Plaintiffs and Ohio Class Members with the services of the TikTok application. The Ohio Plaintiffs and Ohio Class Members used the TikTok application for purposes that are primarily personal, family, or household.

549.    Ohio's Consumer Sales Practices Act, Ohio Rev. Code § 1345, *et seq.* ("CSPA") prohibits "unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A).

550.    TikTok violated the Ohio CSPA by engaging in the unfair or deceptive acts and practices alleged previously, and as further specified below.

551.    Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of the Ohio Plaintiffs and Ohio Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for

Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to the Ohio Plaintiffs and Ohio Class Members outweigh their utility, if any.

552.   As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years old that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

553.   TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

554.   Defendants each engaged in consumer-oriented acts through the offer, promotion, and/or distribution of the TikTok app, which significantly impacted the public because TikTok is used nationwide, including in Ohio, and there are millions of users, including the Ohio Plaintiffs and Members of the Ohio Class.

555.   Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of children under 13 years old and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

556.   As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their collection of the personal information of the Ohio Plaintiffs and the Ohio Class Members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

557.   As outlined herein, Defendants intentionally designed TikTok to, among

other things, attract children under 13 by making child-directed content available to them so that TikTok could collect the personal information for substantial commercial gain.

558.  TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

559.  In particular, Defendants systematically collected and/or used personal information from children under 13 years old in violation of COPPA, and therefore the FTC Act, by:

a.  Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b.  Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c.  Failing to obtain verifiable parental consent before any collection or

use of personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.  Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

560.  The Ohio CSPA instructs that, in construing the Ohio CSPA, courts "shall give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45 (a)(1) of the 'Federal Trade Commission Act,' 38 Stat. 717 (1914), 15 U.S.C.A. 41, as amended." Ohio Rev. Code § 1345.02(C).

561.  Under 15 U.S.C. § 6502(c), violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair…act or practice prescribed under 15 U.S.C. § 57(a)(1)(B)." The COPPA and FTC rules define unfair acts or practices in or affecting commerce within the meaning of the FTC Act, 15 U.S.C. § 45(a)(1), which is the model for numerous state consumer protection statutes, including the CSPA.[54]

562.  Given that CSPA is modeled after and proscribes the same conduct as prohibited by the FTC Act, Defendants violated CSPA by engaging in unfair and illegal acts as outlawed by 15 U.S.C. § 45(a)(1).

563.  TikTok's business practices alleged herein are unethical, unscrupulous, and substantially injurious to children, and thus constitute an unfair practice under the Ohio CSPA. The harm these practices caused to Ohio Plaintiffs and Ohio Class Members outweigh their utility, if any. The Ohio Plaintiffs and Members of the Ohio Class were unable to avoid injury because Defendants deliberately took advantage of their consumers' – in this case, children under the age of 13 – lack of knowledge, experience, ability, and/or capacity.

---

[54] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the internet.").

564.   TikTok's business practices alleged herein are unethical, unscrupulous, and substantially injurious to children, and thus constitute an unfair practice under the Ohio CSPA. The harm these practices caused to Ohio Plaintiffs and Ohio Class Members outweigh their utility, if any. The Ohio Plaintiffs and Members of the Ohio Class were unable to avoid injury because Defendants deliberately took advantage of their consumers' – in this case, children under the age of 13 – lack of knowledge, experience, ability, and/or capacity.

565.   Defendants knew or recklessly disregarded their violations of CSPA by willfully committing the unlawful and unfair acts outlined throughout this complaint.

566.   Defendants' actions were a substantial factor causing harm, injury in fact, and actual damages to the Ohio Plaintiffs and Members of the Ohio Class.

567.   Ohio Plaintiffs and Members of the Ohio Class have standing to bring their claims under CSPA. The Ohio Plaintiffs and Members of the Ohio Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, "benefit-of-the-bargain" damages, the loss of the value and/or diminishment in value of their personal information, and the loss of the ability to control the use of their personal information.

568.   Ohio Plaintiffs and Members of the Ohio Class suffered "benefit-of-the-bargain" injuries and damages as a direct and proximate result of Defendants' unfair and unlawful business practices. The Ohio Plaintiffs and Members of the Ohio Class did not receive the full benefit of the bargain, and instead received services from TikTok that were less valuable than the services they would have received if TikTok had abided by COPPA.

569.   The Ohio Plaintiffs and Members of the Ohio Class, therefore, were damaged in an amount at least equal to the difference in value of the TikTok service that the Ohio Plaintiffs and Members of the Ohio Class received (for example. where TikTok collected and used children's personal information without notifying their parents or

gaining their parents' consent) and the value of the TikTok service that Ohio Plaintiffs and Ohio Class Members would have received if TikTok had abided by COPPA (and, for example, not collected and used children's personal information without notifying their parents or gaining their parents' consent).

570. The Ohio Plaintiffs and Members of the Ohio Class have a property interest in the personal information collected by TikTok. Ohio Plaintiffs and Class Members suffered an economic injury because they were deprived of their right to exclude TikTok from their personal information.

571. The Ohio Plaintiffs' and Members of the Ohio Class's damages may also be measured by the amount of monetary compensation that TikTok would have to provide to parents to gain their consent to collect and use their children's personal information.

572. The Ohio Plaintiffs and Members of the Ohio Class also suffered damages because the Defendants' unfair and unlawful acts and practices diminished the value of their personal information.

573. As outlined herein, there is tangible value in the Ohio Plaintiffs' and Members of the Ohio Class's personal information. The Ohio Plaintiffs and Members of the Ohio class have lost the opportunity to receive value in exchange for their personal information.

574. Defendants' monetization of the Ohio Plaintiffs' and Members of the Ohio Class's personal information demonstrates that there is a market for their personal information.

575. The Ohio Plaintiffs' and Members of the Ohio Class's personal information is now in the possession of Defendants, who have used and will use it for their financial gain.

576. Ohio Plaintiffs request that the Court restore to Ohio Plaintiffs and the Ohio Class, in the form of restitution, all money TikTok may have acquired as a result of its unlawful and unfair business practices. Ohio Plaintiffs and Ohio Class Members also

seek equitable relief to enjoin TikTok from continuing its unlawful and unfair practices and any other equitable relief necessary to secure the interests of the Class Members.

577.    Defendants' retention of the Ohio Plaintiffs' and Members of the Ohio Class's personal information presents a continuing risk to them as well as the general public. The Ohio Plaintiffs and Members of the Ohio Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by CSPA and applicable law, including restitution and attorneys' fees, as well as an injunction requiring Defendants to permanently delete, destroy or otherwise sequester the personal information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the personal information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

578.    Ohio Plaintiffs and Ohio Class Members lack an adequate remedy at law. It is unclear whether an award of damages can or will adequately remedy the Ohio Plaintiffs' monetary losses. The restitution that Ohio Plaintiffs and Ohio Class Members seek under CSPA is not the same remedy as disgorgement for unjust enrichment. Furthermore, restitution under CSPA is more prompt, efficient, and certain than the monetary damages that Plaintiffs seek.

579.    The Ohio Plaintiffs and Ohio Class Members also lack an adequate remedy at law because TikTok's refusal to abide by the 2019 Permanent Injunction is a future harm. Namely, TikTok continues to profit from its unlawful business practices at the expense of the privacy of children, and TikTok has failed to implement adequate age gates, to identify and remove underage users of non-Kids Mode accounts, to delete data, even upon parental request, has taken steps to make deletion requests onerous, and has continued to collect data from purportedly deleted accounts.

580.    Ohio Plaintiffs and Ohio Class Members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, actual damages, attorney's fees and other relief allowable under Ohio Rev. Code

§ 1345.09.

## COUNT XIV
## NEGLIGENCE
**(Against all Defendants by Plaintiffs P.B., J.S.,
and J.F., by and through their Parent, on
behalf of Themselves and the Ohio Class)**

581.   The Ohio Plaintiffs and Ohio Class Members re-allege Paragraphs 1-200 as if fully set forth herein.

582.   At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Ohio Plaintiffs' and Ohio Class Members' use of TikTok.

583.   Defendants owed Ohio Plaintiffs and Ohio Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

584.   Defendants also owed Ohio Plaintiffs and Ohio Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

585.   Ohio Plaintiffs and Ohio Class Members are within the class of persons that COPPA was intended to protect.

586.   Defendants also owed a special relationship duty to Ohio Plaintiffs and Ohio Class Members to protect them against harm caused by TikTok. Ohio Plaintiffs and Ohio Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe environment on TikTok, and Defendants have the superior ability and control over TikTok to provide that safety on its app. The special relationship Ohio Plaintiffs and Ohio Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the increase in users and user activity generated by children.

587.   Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise

reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

588.   Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

589.   Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Ohio Plaintiffs and Ohio Class Members by Defendants' want of ordinary care and/or skill in the management of their property.

590.   Ohio Plaintiffs and Ohio Class Members were foreseeable users of TikTok.

591.   Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

592.   Defendants had actual knowledge that children under the age of 13, such as Ohio Plaintiffs and Ohio Class Members, were using and would use Full Access Platform.

593.   Defendants invited, solicited, and encouraged fact, extent, and manner of Ohio Plaintiffs' and Ohio Class Members' use of TikTok.

594.   Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using Ohio Plaintiffs' and Ohio Class Members' personal information.

595.   At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Ohio Plaintiffs and Ohio Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

596.   Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

597.   Defendants had actual knowledge that when under-13 users created regular

accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

598.    Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

599.    Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Ohio Plaintiffs and Ohio Class Members by violating their privacy.

600.    Defendants had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

601.    Defendants could have avoided Ohio Plaintiffs' and Ohio Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

602.    Imposing a duty on Defendants would benefit the community at large.

603.    Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Ohio Plaintiffs and Ohio Class Members.

604.    Defendants owed a heightened duty of care to youth users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to youth users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

605.    Defendants breached their duty of care that they owed Ohio Plaintiffs and Ohio Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public,

independent of any actions taken by a third party. Those breaches include, but are not limited to:

    a.    Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity of users or by adopting ineffective age and identity verification protocols,

    b.    Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

    c.    Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikToks policies and the 2019 Consent Decree, and

    d.    Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

606.   Defendants have breached their duty of care that they owed to Ohio Plaintiffs and Ohio Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

    a.    Failing to implement effective protocols to block users under the age of 13,

    b.    Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

    c.    Failing to implement effective parental controls.

607.   These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

608.   Defendants' violation of COPPA constitutes negligence per se.

609.   A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Ohio Plaintiffs and Ohio Class Members.

610.   At all relevant times, Ohio Plaintiffs and Ohio Class Members used TikTok in the manner it was intended to be used.

611.   As a direct and proximate result of Defendants' breach of one or more of its duties, Ohio Plaintiffs and Ohio Class Members were harmed by Defendants' violation of Ohio Plaintiffs' and Ohio Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

612.   The harm to the Ohio Plaintiffs and Ohio Class Members is the type of harm that COPPA was intended to prevent.

613.   The Ohio Plaintiffs and Ohio Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

614.   Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Ohio Plaintiffs and Ohio Class Members.

615.   But for Defendants' violation of the applicable laws and regulations related to COPPA, Ohio Plaintiffs' and Ohio Class Members' personal information would not have been used, collected, or disclosed to third parties.

616.   As a direct and proximate result of Defendants' negligence per se, Ohio Plaintiffs and Ohio Class Members have been injured and are entitled to damages in an amount to be proven at trial.

617. Ohio Plaintiffs and Ohio Class Members demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## IX. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of themselves and the proposed Classes, respectfully request relief as follows:

A. An order certifying this action as a class action, and certifying the Classes defined herein, designating Plaintiffs, as described above, as the representatives of the respective Classes defined herein, and appointing Plaintiffs' counsel as counsel for the Classes;

B. An order declaring that Defendants' actions, as described above constitute negligence and violations of the state consumer protection statutes set forth above, and that Defendants were unjustly enriched as a result of their actions.

C. A judgment awarding Plaintiffs and the Members of the Classes appropriate relief, including actual, compensatory, and/or statutory damages, and punitive damages (as permitted by law), in an amount to be determined at trial;

D. A judgment awarding any and all equitable, injunctive, and declaratory relief as may be appropriate, including orders of disgorgement of Defendants' unlawful gains, and restitution;

E. A judgment awarding injunctive relief as set forth above, non-restitutionary disgorgement of profits and unlawful gains, and such other equitable relief as the Court may deem proper;

F. A judgment awarding all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action, and other relief as permitted by law;

G.    Pre-judgment and post-judgment interest, as permitted by law; and

H.    Grant such other legal and equitable relief as the Court may deem appropriate.

## X.    DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated: September 16, 2025                Respectfully submitted,

By: */s/ Kelly Weil*
Kelly Weil (Cal. Bar No. 291398)
**COTCHETT PITRE & MCCARTHY LLP**
2716 Ocean Park Blvd.
Ste. 3088
Santa Monica, CA 90405
T: (310) 392-2008
kweil@cpmlegal.com

Karin Swope (*pro hac vice to be filed*)
Andrew J. Fuller (*pro hac vice to be filed*)
**COTCHETT PITRE & MCCARTHY LLP**
1809 7th Ave.
Ste. 1610
Seattle, WA 98101
T: (206) 802-1272
F: (206) 299-4184
kswope@cpmlegal.com
afuller@cpmlegal.com

*Counsel for Plaintiffs and the Putative Classes*

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP